**UNITED STATES of America**

v.

**Max Morris WEISS.**

No. 54 Cr 263.

United States District Court
N. D. Illinois, E. D.

Oct. 14, 1955.

James B. Parsons, Asst. U. S. Atty., for the N. D. of Illinois, Chicago, Ill., appeared on behalf of the Government.

Edmund Hatfield, Chicago, Ill., appeared on behalf of the defendant.

CAMPBELL, District Judge.

The petitioner herein is charged with being a member of an organization that teaches and advocates the overthrow of the Government of the United States by force and violence, knowing that such organization teaches such use of violence and intending himself the overthrow of the Government of the United States by such use of violence. The case is now before the Court on the petitioner's motion to reduce bail which was heretofore fixed at $35,000 by another Federal Court.

Counsel for the petitioner orally represents to this Court that the petitioner is a man of meagre funds; that he has never been convicted of any crime; and that the amount of bail now fixed is excessive in view of the bail usually fixed in cases where a defendant, if convicted, is subject to similar punishment as the petitioner in this case.

Counsel for the respondent vigorously attacks the petitioner's motion for reduction of bail, arguing that the nature of the offense charged, considered with the character of the petitioner, is such that the presence of the petitioner for trial can only be assured by the amount of bail already fixed.

The Eighth Amendment to the Constitution of the United States guarantees that excessive bail shall not be imposed. Rule 46(a) (1) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. provides that a person charged with an offense not punishable by death shall be admitted to bail. Rule 46(c) enunciates the guiding principles in determining the amount of bail. Two of these principles are the nature of the offense charged and the character of the defendant.

■ Concerning the nature of the offense charged, the constitutionality of the section of the Smith Act, 18 U.S.C.A. § 2385, under which this charge is brought must be assumed for the purposes of the motion now addressed to this Court. In cases of this sort, the seriousness of the offense charged cannot be measured by the severity of the punishment that might be assessed; rather, the nature of the offense charged is to be measured by the danger that a member of such a revolutionary party presents to the Government of the United States and to the people it represents. If the petitioner actively belongs to a party knowing the same to advocate the violent overthrow of this Government, then he represents a constant threat to the security of the nation.

■ In effect, what the respondent argued here is that the persons charged with having violated the Smith Act should not be admitted to bail. That is to say, the offense charged herein should be a non-bailable offense. The Congress, however, in making membership in such a party a crime, has not seen fit to make such an offense non-bailable. It cannot be denied that Congress has enacted special legislation which has aided the Government in its prosecution of violators of the Smith Act, Congress can, and perhaps should if it is to take a consistent position in the matter, make the offenses charged in the Smith Act non-bailable offenses, or at least should vest in the District Court necessary discretion to determine whether, under the circumstances of a particular case, a defendant charged with any violation of the Smith Act, should be admitted to bail and if so at what amount. However, be that as it may, Congress has not made the offense non-bailable; therefore, I must consider whether the petitioner under the facts of this case, merits a reduction in bail.

Concerning the character of the petitioner, his counsel represents orally to this Court that he is a writer employed by the Communist Party. Respondent's Exhibit No. 1, which is part of the transcript of the record in United States of America v. William Z. Foster, et al., tried in the United States District Court for the Southern District of New York, indicates that the petitioner herein, when called as a witness in that case, admitted that he was a member of the Communist Party and that he had been a member since 1931 or 1932. The petitioner's testimony in that case also discloses that the petitioner has held, at one time or another, various offices in Communist organizations. The petitioner in the instant case was indicted on May 14, 1954, at which time the indictment was suppressed. The respondent contends that the petitioner has been living "underground" since that date, and the petitioner's counsel represents that the petitioner has been living openly. In any event, the petitioner was apprehended on September 19, 1955 in New York City, although the FBI had been searching for him since the date on which the indictment was returned.

Counsel for the petitioner orally represents to this Court, on behalf of his client, that the petitioner resides at 2155 Grand Concourse in New York City. In support of this representation, petitioner's counsel has introduced into evidence, at the hearing on the instant motion, Pe-

titioner's Exhibits Numbered 3 and 4. Exhibit No. 3 consists of twenty-two checks signed by a "Sady Weiss", who, I am informed by petitioner's counsel, is the wife of the petitioner. These checks are made payable to the landlord of the premises located at 2155 Grand Concourse and presumably are in payment of the rent for an apartment located therein. It is significant to note that these checks were signed by the petitioner's wife and not the petitioner himself, as it is the Government's contention that the petitioner did not live with his wife at the above mentioned address. Notwithstanding this observation, Petitioner's Exhibit No. 3 is not competent evidence that the petitioner did, in fact, live at 2155 Grand Concourse, since it merely shows that a "Sady Weiss" paid the rent for a certain apartment located at that address. To like effect, is Petitioner's Exhibit No. 4, which merely indicates that certain insurance premium notices were addressed to the petitioner at 2155 Grand Concourse.

In support of its position that the petitioner herein has lived underground since the return of the instant indictment, the respondent has introduced into evidence at the hearing on this motion, Respondent's Exhibits Numbered 3, 4, and 5. Exhibit No. 3 is a sworn affidavit of a special agent of the Federal Bureau of Investigation which indicates that as a result of his personal investigation no information was developed which would indicate that the petitioner did, in fact, live at 2155 Grand Concourse, in New York City, although the petitioner's wife and daughter actually lived at said address. The affidavit further states that the agent was in contact with persons who were in position to have personal knowledge of the identities of the individuals residing at 2155 Grand Concourse, but that, although these persons had personal knowledge that the petitioner's wife and daughter lived at that address, they had no knowledge whatsoever of the petitioner being a resident thereof. Respondent's Exhibit No. 4 is a sworn affidavit by a special agent of the FBI, indicating that on June 21, 1955, the petitioner used the name "Ralph Singer", rather than his true name, in a transaction with a certain automobile company in New York. Respondent's Exhibit No. 5 is the sworn affidavit of the agent who arrested the petitioner in New York. This affidavit asserts that the petitioner, when arrested, did not have in his possession marks, cards, papers, documents or other objects of identification which would disclose his identity, address, or place of employment. This affidavit further discloses that the petitioner had in his possession when arrested certain documents which would tend to indicate that the petitioner had travelled to a considerable extent.

■ Viewing these singularly important facts concerning the petitioner's character—his lack of a permanent, known address, his use of assumed names, his custom of not carrying means of identification on his person, his inclination to travel—I conclude, as I must, that the petitioner did not live openly as his counsel suggests. This being the case he is not such a person as can be admitted to bail at a nominal sum. Indeed, the petitioner herein surrounds himself with a cloud of mystery and then asks this Court to reduce his bail so that he might go free. If bail were set at some nominal amount, it would not be too surprising to this Court, considering the facts involved herein, if the petitioner went underground for another long period, and the Government would be forced to expend several thousands of dollars in excess of the present bail in seeking his apprehension.

Having considered the petitioner's character, and having considered the nature of the offense charged, I find that petitioner has failed to prove the allegations of his pending motion and that bail as heretofore fixed herein in the amount of $35,000 is not excessive.

The petitioner's motion for reduction of bail is hereby denied, and bail is hereby continued in the amount of $35,000. It is so ordered.