**UNITED STATES of America,**
**Respondent-Appellee,**

v.

**Max Morris WEISS, Petitioner-Appellant.**

**Petition of Max Morris WEISS.**
**No. 11593.**

United States Court of Appeals
Seventh Circuit.
May 4, 1956.

Edmund Hatfield, Pearl M. Hart, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., William F. Tompkins, Asst. Atty. Gen., Lawrence P. McGauley, Atty. Dept. of Justice, Washington, D. C., James B. Parsons, Asst. U. S. Atty., Northern Dist. of Illinois, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

Petitioner Weiss appeals from the order of the District Court denying his motion for a reduction in bail in the case of United States of America v. Max Morris Weiss, No. 54 CR 263, 141 F.Supp. 88, and continuing his bail at $35,000.

Petitioner was indicted on May 14, 1954 in the Northern District of Illinois, the indictment charging a violation of the membership clause of the Smith Act, Title 18 U.S.C. § 2385. Petitioner was apprehended in New York on September 19, 1955. A hearing was held in New York before Judge Sugarman on the Government's petition for a warrant of removal, and the Judge fixed bail in the amount of $35,000. This order was made without prejudice to petitioner making further application for reduction of bail. Petitioner did not make bail in New York, and was brought to Chicago in custody. Cause 54 CR 263 was assigned to Judge Campbell for trial, and a motion for reduction in bail was made before him. A hearing was held on October 12, 1955, evidence was received, and on October 14, 1955, Judge Campbell denied the motion to reduce bail. An appropriate order was entered and an appeal to this Court was promptly filed.

The Government explains the delay between the return of the indictment on May 14, 1954, and the date of arrest on a bench warrant on September 19, 1955, by claiming petitioner was "underground." However, the indictment was not released until September 20, 1955, so it may be assumed that prior to his arrest defendant was not informed that he had been indicted, although he may well have suspected that such was the case.

Petitioner introduced in evidence cancelled checks and money order receipts evidencing payments by plaintiff's wife of monthly rental on an apartment where she lived in New York City. Also received in evidence were receipted bills for insurance premiums addressed to petitioner at the same address. From this petitioner argues that as others, such as insurance companies, knew how to reach him, he could not have been "underground."

The Government introduced evidence to show petitioner had been a member of the Communist Party since 1931, holding various important offices therein. There was also introduced affidavits of FBI agents showing efforts made by the Government to locate petitioner. It was also shown that at the time of his arrest, petitioner had nothing on him which would indicate his identity.

Petitioner had no previous record of arrest or conviction of a felony. However, he did have a record of long and devoted service to the Communist Party. In 1931 he was Labor Coordinator of the Communist Party in the middle west. Among other positions which he held were District Organizer of the Young Communist League; a Delegate to the Sixth World Congress of the Young Communist League at Moscow; National Secretary of the Young Communist League; Member of the National Committee of the Communist Party; District Organizer for the Communist Party in Pennsylvania and Ohio.

Petitioner also introduced a tabulation of bails set in recent criminal cases in the Northern District of Illinois. This tabulation showed that in thirty-five cases on the then current calendar docket which carried the same maximum punishment as the case at bar, the highest bail set had been $5,000, and such maximum amount was required in only three of the thirty-five cases.

By affidavit petitioner showed that Eugene Dennis and seven other top leaders of the Communist Party who had been indicted under the membership clause of the Smith Act are presently enlarged on bail in the sum of $5,000 each.

The United States Constitution, Amendment VIII, provides: "Excessive bail shall not be required * *." Since petitioner has not yet been brought to trial, and is charged with a non-capital offense, he has an absolute right to be admitted to bail, Rule 46(a) Federal Rules of Criminal Procedure, 18 U.S. C.A., based as to the amount fixed, on the standards set forth in Rule 46(c) Federal Rules of Criminal Procedure. Bail is excessive when it is set at an amount higher than that reasonably calculated to insure an accused will appear and stand trial and submit to sentence if convicted. Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3; Heikkinen v. United States, 7 Cir., 208 F.2d 738.

Rule 46(c) of the Federal Rules of Criminal Procedure provides that the amount of bail " * * * shall be such as in the judgment of the commissioner or court or judge or justice will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant."

In Stack v. Boyle, supra, the twelve defendants had been indicted charging conspiracy to violate the Smith Act, 18 U.S.C. § 2385. In referring to the right of a person arrested for a non-capital offense to be admitted to bail the court said, 342 U.S. at page 4, 72 S.Ct. at page 3: "This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction * * *. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." The court also said, 342 U.S. at page 6, 72 S.Ct. at page 4: "To infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act. Such con-

duct would inject into our own system of government the very principles of totalitarianism which Congress was seeking to guard against in passing the statute under which petitioners have been indicted."

The same opinion also pointed out that there is no discretion to refuse to reduce excessive bail, and that an order denying a motion to reduce bail is appealable as a "final decision."

The Court of Appeals for the Ninth Circuit interprets Stack v. Boyle, 342 U. S. 1, 72 S.Ct. 1, 96 L.Ed. 3, as holding that bail should not be higher than normally fixed for offenses carrying like penalties in the absence of showing of special circumstances requiring larger bail. Spector v. United States, 193 F. 2d 1002, 1004. It was established in the case at bar that in thirty-five cases on the then current criminal calendar which carried the same maximum punishment as the charge herein, the highest bail set was $5,000. The Government answers by pointing out that in four Smith Act membership cases throughout the country, the bail in two was fixed at $35,000 in the third at $30,000 and in the fourth at $20,000.

The latest word we have from the Supreme Court is the action of Justice Harlan in Noto v. United States, 1955, 76 S.Ct. 255, 100 L.Ed. ——. Noto was indicted under the membership clause of the Smith Act, 18 U.S.C. § 2385. He refused to give any information as to his whereabouts for the four years preceding his arrest. The District Judge set his bail at $30,000. The Court of Appeals, one judge dissenting, affirmed. Justice Harlan however, after conferring with his colleagues, ordered that Noto be enlarged upon bail in the amount of $10,000. The Justice points out that in the "first-string" communist cases in the Southern District of New York, pre-conviction bail was fixed at $5,000 for each defendant. In sixteen other Smith Act "conspiracy" cases throughout the country, the average bail required was about

$9,000, that over two thirds of the more than one hundred defendants released before trial in cases throughout the country, bail ranged between $5,000 and $10,-000.

■■ In determining how much bail an accused should be required to give, there is a latitude between a figure which is clearly inadequate, and one which is clearly excessive. Forest v. United States, 8 Cir., 203 F.2d 83, 84. In our view, at least until such time as the Supreme Court has declared the membership clause of the Smith Act to be constitutional, a reasonable amount of bail would range from $5,000 to $10,000 depending upon the individual case. Of course, these maximum and minimum limits cannot be considered to be unyielding, but may be considered to be the norm for this type of case.

■ We hold that the bail required in the case at bar in the sum of $35,000 is clearly excessive. Deferring to the view of the District Judge that there are reasons in this case which logically and reasonably require a higher bail bond than normal, we hold that the petitioner should be enlarged on a bond in the sum of $15,000 with such surety or security as may be approved by the District Court for the Northern District of Illinois.

The Government points to the fact that petitioner eventually did raise the $35,000 and is presently enlarged. Of course, this fact was not and could not have been before Judge Campbell. In any event, it is apparent that the amount was raised with great difficulty and representations have been made to this Court that, in a number of instances, those who advanced sums are desirous and insisting upon repayment at the present time.

Inasmuch as petitioner had made bail we determined at one point during the course of this appeal that the question before us was moot and ruled accordingly. Upon reconsideration, we decided the constitutional question of whether the

bail of $35,000 was excessive was properly before us whether petitioner had made bail or not. It was our view that this important question should be decided upon the merits.

Reversed and remanded with instructions to enlarge petitioner upon bail in the sum of $15,000.

FINNEGAN, Circuit Judge (dissenting).

Weiss has not been denied bail. He is currently at liberty and has been since posting a $35,000 bond on November 2, 1955. (Affidavit of Weiss' counsel filed in support of the motion to reduce bail pending trial, page 3.) Yet he asks us for a reduction of the bail, to which he is admitted, on the grounds that the Eighth Amendment provides: "Excessive bail shall not be required *  *." If that interdiction is applicable to an indicted person already enlarged on bail, pending trial on the merits, then I think the majority had a justiciable issue for disposition on appeal from an order denying reduction of bail. Stack v. Boyle, 1951, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3.

But since Weiss has long since been released on bail the well-settled reasons for allowing bail are irrelevant. He can enjoy them all. Indeed, during oral argument the only major reasons sponsored by Weiss' counsel for proceeding in our court now appear to be: (i) those persons who contributed toward the bail posted would now like some of their money returned and, (ii) it would be helpful if this court would announce a dollar norm as the yardstick for bail in future cases of this type. Also see: par. 9, affidavit of defendant's counsel filed in this Court, December 16, 1955, regarding the alleged public importance of the matter before us.

Freedom, at stake in Noto v. United States, 1955, 76 S.Ct. 255, 256, is not in issue under Weiss' appeal. By marginal notation it is there reported that Noto had "been incarcerated since August 31, 1955. His [Noto's] allegations that he is unable himself to make the bail as fixed, or to raise more than $10,000 from his relatives and friends, are not controverted." We, on the other hand, are asked to determine whether Weiss' posted bail is excessive. The practical effect of reducing Weiss' bail in our court simply means he continues at liberty at lower security. Whether such reduction increases the risk of his non-appearance for trial leads right back into the labyrinth of argument concerning "the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant." Rule 46(c), Federal Rules of Criminal Procedure, 18 U.S.C. Weiss has shown the ability to raise the bail fixed below. I think it unnecessary to interpret the line "financial ability of the defendant to give bail" by constricting it to this defendant himself or ascertaining if it means Weiss and his friends. However, he has demonstrated his capacity for commanding financial resources which could be said equates to the ability mentioned in Rule 46(c). Weiss proceeds on the tacit theory that though the object of bail is for the release of an accused person, posted bail can run afoul of the Eighth Amendment. Yet there is nothing before us indicating that the quantum of Weiss' current bail imperils his present freedom.

From my view-point Weiss uses his status, as a person enlarged on bail, for obtaining an advisory opinion from our Court despite the criteria laid down by Rule 46(c) ceilinged by the Eighth Amendment. Amounts of pre-trial bail for potential future offenders cannot be set up like a table of logarithms. Even my brothers, after announcing a "norm for this type of case" by way of a span of $5,000 to $10,000 promptly exceed its upper limits by $5,000. I have grave doubts about our power to prescribe uniform blanket bail ranges for future individual cases. I am unable to join in this facile method of amending Rule 46

(c). It is one thing to tabulate bails set in similar cases for purely comparison purposes and quite another to mandate a span with a minimum and maximum. Not only do I think such a suggestion exceeds our judicial powers, but to my mind setting a minimum of $5,000 invades the province of trial judges. Under some circumstances the announced minimum might run counter to the Eighth Amendment.

Because the membership clause of the Smith Act is still untested by the Supreme Court has little if any persuasive power for me. Certainly it is underscoring the obvious to reiterate the presumption of constitutionality accorded an act of Congress. Just how the fact that the clause has not yet been subjected to judicial baptism dictates the quantum of bail is unexplained in the majority opinion.

The constitutional issue tendered by this appeal hinges upon the purpose and interpretation of the Eighth Amendment. Historically and currently, courts have viewed that portion of the Bill of Rights as an insulation against bail in such exorbitant amounts that the right of liberty pending trial is lost. Stack v. Boyle, 1951, 342 U.S. 1, 3, 72 S.Ct. 1, 96 L.Ed. 3, cf. Carlson v. Landon, 1952, 342 U.S. 524, 545, 72 S.Ct. 525, 96 L.Ed. 547. But I think we must be cautious in passing upon constitutional protections of personal liberty as abstract propositions. I would confine our disposition of this appeal to a review of the order entered below and avoid putting fetters on the discretion of trial judges by supplying a range of bail. The core of Rule 46(c) is embedded in a texture of sufficient suppleness to individualize bail. Any constriction at this level is, in my opinion, unauthorized and unwarranted.

For these reasons I would refrain from converting this appeal into a declaration of standards for bail resting upon some elusive prophetic discernment. The order appealed, and Weiss' present bail should be left undisturbed.