UNITED STATES, Appellee

v

HENRY H. WILSON, Basic Airman,
U. S. Air Force, Appellant

10 USCMA 337, 27 CMR 411

No. 12,270

Decided April 17, 1959

*Lieutenant Colonel Sam F. Carter* and *Captain John H. Leonard* were on the brief for Appellant, Accused.

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion

ROBERT E. QUINN, Chief Judge:

In January 1957 the accused cashed a $30.00 check in a supermarket. The check was drawn by him on a nonexistent account. On August 23, he confessed to his misconduct. About two weeks later he cashed a check payable to himself in the amount of $25.00. The signature on the check was a forgery and that fact was known to the accused. A few days later the accused paid for gasoline purchased by him with a check for $3.15 drawn on a nonexistent account. Eventually, he was charged with, and convicted of, a violation of Article 121 (Charge I, larceny of $30.00), Article 123 (Charge II, uttering a forged instrument), and Article 134 (Charge III, dishonorable failure to place sufficient funds in a bank for payment of a check), Uniform Code of Military Justice, 10 USC §§ 921, 923, 934.

At trial, the accused moved to dismiss the charges on the ground that he was deprived of a speedy trial and of liberty without due process of law, both in violation of the United States Constitution. The motion was denied by the law officer and his ruling was affirmed on the review below. The correctness of the ruling is the principal question on this appeal.

An accused has a right to a speedy trial, and if it is denied to him, he is entitled to dismissal of the charges. This right is different from the right to remain at liberty before trial. Cf. United States Constitution, Seventh Amendment; Rules 5 and 6, Federal Rules of Criminal Procedure; Stack v Boyle, 342 US 1, 96 L ed 3, 72 S Ct 1. The right to a speedy trial may be waived. United States v Callahan, 10 USCMA 156, 27 CMR 230. It is distinctly arguable that it was waived in this case. Thus, at several places in the argument on the motion to dismiss, civilian defense counsel stressed the fact that he was not "much concerned" with the right to a speedy trial but was

338

challenging the failure of the military authorities to release the accused from pretrial confinement. Representative of his statements are the following remarks:

". . . I would like to point out here that I am not complaining about . . . the fact it took this long to get to trial or to reach trial, we are complaining about the fact that the man was kept in the guardhouse and of how he was deprived of his liberty during that period of time."

However, at other places in the argument, and in his supporting brief, defense counsel adverted to the constitutional right to a speedy trial. Although I am not inclined to permit a litigant "to blow hot and cold" at the same time, in the interests of justice I believe it appropriate to put aside the question of express waiver to reach the merits of the motion.

The motion has two parts. First, it is alleged the accused was deprived of liberty without due process of law, in violation of his rights under the Fifth Amendment to the Constitution of the United States.[1] It was established, at the argument, that the accused was confined in the post stockade on September 12, 1957, and remained in confinement until the case came on for trial on February 3, 1958. There was, and still is, no contention the confinement was illegal or not justified by probable cause. See Article 9, Uniform Code of Military Justice, 10 USC § 809. As a matter of fact, the record shows the contrary. It follows, therefore, that the incarceration was legal at its inception. The question then is whether it remained so until trial. As District Judge Kennedy pointed out in Ex parte Monti, 79 F Supp 651, 654 (ED NY) (1948), there "must come a time when a very long incarceration on a mere complaint deprives a prisoner of a constitutional right."

In the Federal criminal law an accused may be held to answer for an offense. Rule 5, Federal Rules of Criminal Procedure. Usually, detention is directed after examination by a commissioner and a determination of probable cause, or the return of an indictment and arraignment before a judge. Cf. United States v Tees, 211 F 2d 69 (CA 3d Cir) (1954). However, in a noncapital case, the accused has an absolute right to bail. Rule 46a, Federal Rules of Criminal Procedure. United States v Weiss, 233 F 2d 463 (CA 7th Cir) (1956). It has been said that there is no right to bail in the military courts. On the other hand, Winthrop observes that at least an officer under charges can be allowed to be at large in "open" arrest because his commission "is a sufficient *security,* answering to *bail* at the criminal law, for his not withdrawing himself from military custody, and for his appearance before the court for trial at the appointed time." Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 114; see also Samuel's History of the British Army, page 641. The matter is interesting, but unnecessary to consideration of the case. Suffice it to note that even where the right to bail is absolute, bail must be applied for. And, in any event, the relief to which the accused is entitled, is to have reasonable bail fixed and to make that bail. If he cannot give bail, he has "no recourse but to move for trial . . . [and] should the court deny him the speedy trial to which the Constitution entitles him, it may be that he should be released on habeas corpus." United States v Rumrich, 180 F 2d 575, 576 (CA 2d Cir) (1950). And, parenthetically, it should be observed that, in the military, a person who improperly keeps an accused in confinement may be liable for prosecution for a violation of the Uniform Code. Article 98, Uniform Code, 10 USC § 898. It follows that the motion to dismiss on the ground of deprivation of liberty was properly denied.

Whether the accused has been deprived of the right to a speedy trial depends upon a consideration of the surrounding circumstances. United States v Callahan, supra. Restricting my-

[1] The Fifth Amendment provides in part as follows:

"No person shall . . . be deprived of life, liberty, or property, without due process of law. . . ."

self to the facts presented to the law officer on the motion to dismiss, it appears, as I have previously indicated, that the accused was confined on September 12, 1957. Formal charges were preferred on September 24. These were referred to a special court-martial. On October 3, trial counsel of the special court read the charges to the accused. At that time the accused was represented by appointed military counsel certified in accordance with Article 27 of the Code. That counsel also represented the accused at this trial, along with individual civilian counsel. The charges were scheduled for trial on October 29. However, on that day they were withdrawn because the forged check charge came to the attention of the military authorities. On October 31 new charges were preferred and the accused was informed of them. On the same day the charges were forwarded to an officer for investigation in accordance with Article 32 of the Code. On November 1, civilian counsel appeared for the accused and requested a delay of proceedings until November 9. A further continuance was granted to him until November 13. The Article 32 report was filed on November 29. During either the latter part of November, or in early December, the accused asked his squadron commander to be released from confinement. The commander told him he would "think it over," but the accused heard nothing further from him. On an undisclosed date, trial counsel "scheduled trial" for January 27. Trial "was delayed" by the defense until the 29th of January, and again postponed until February 3. Trial counsel also represented that a 60-day period between the accused's confinement and trial "is held attributable to the accused." By motion dated January 20, 1958, civilian counsel moved before the convening authority to dismiss the charges for the same reasons advanced here. The motion was received on January 22 or 23. Apparently, no formal action was taken by the convening authority. Instead, defense counsel was unofficially informed the motion should be presented at the trial.

Congress unmistakably provided in the Uniform Code that an accused person should be prosecuted with due diligence. Articles 10, 33, and 98, Uniform Code of Military Justice, 10 USC §§ 810, 833, 898; United States v Hounshell, 7 USCMA 3, 21 CMR 129. Particularly, it indicated that delay cannot be condoned if the accused is in arrest or confinement. If the accused is not allowed to remain at liberty pending trial, Article 10 directs that "immediate steps" be taken to inform him of the charges and "to try him or to dismiss the charges and release him." I recognize, of course, that in certain situations, an accused might prefer the comparative ease of pretrial confinement to performance of regular military duty. But, under most circumstances, pretrial confinement is a heavy burden; and at least for an enlisted person charged with relatively minor offenses, pretrial confinement imposes a heavier burden than obtains in civilian life since the time of enlistment is extended by the period of pretrial confinement. 10 USC §§ 3638, 5536, 8638. I conclude, therefore, that the period of confinement before trial must be considered in determining whether the case proceeds to trial with reasonable diligence. See United States v Callahan, supra.[2]

At the outset, the Government contends the accused "must have requested trial before he can properly complain of lack of a speedy trial." In the Federal courts, however, demand for trial is not an invariable condition precedent to a motion to dismiss the charges on the ground of deprivation of a speedy trial. See Taylor v United States, 238 F 2d 259 (CA DC Cir) (1956); United States v Chase, 135 F Supp 230 (ND Ill) (1955); cf. United States v Lustman, 258 F 2d 475 (CA 2d Cir) (1958) cert den 358 US 880, 3 L ed 2d 109, 79 S Ct 118 (1958), which stresses the fact that the right to a speedy trial is a

---

[2] I express no opinion on whether the period between preparation of formal charges and the reference of charges to trial is, in the absence of confinement, part of the time to be considered in determining whether the trial is speedy.

340

shield for the defendant's protection, not a sword for escape from trial and punishment.

In the military, application of the rule of waiver, where the accused is confined, has little to recommend it. As this Court pointed out in the *Hounshell* case, supra, page 7, an accused confined in the stockade or brig may "not know of, and therefore be unable to insist upon," his right to a speedy trial. In such circumstance, it would be unjust to indulge in the presumption relied upon by the Government (see 14 Am Jur, Criminal Law, § 137, page 863) that the delay was caused by or with the consent of the accused. In any event, it is arguable that Congress intended the Government to take the initiative in moving a case for trial. I have already pointed out that Article 10 requires that "immediate steps" be taken to try the case or dismiss the charges. The direction of the Article appears to be aimed at the Government. Also in Article 33, Congress said that charges to be tried by a general court-martial must be forwarded to the general court-martial authority within eight days after the accused is placed in arrest or confinement, or that a written statement of the reasons for the delay be submitted. And, in Article 98, Congress said that a knowing and intentional failure to comply with the provisions of the Code regulating procedure "before, during, or after trial" is a punishable offense. For the purposes of this case, I need not examine or decide the merits of this argument. Assuming that under the Uniform Code the burden rests upon the Government to show reasonable diligence, in my opinion, that burden was met in this case.

The accused was confined on September 12, 1957, and the case came on for hearing February 3, 1958. A number of things occurred during that period of 141 days. First, there were delays requested by the defense. Appellate defense counsel contend the showing before the law officer indicates the accused requested delay for the following periods: November 1, 1957, to November 13, 1957; January 27, 1958, to February 3, 1958. However, the staff judge advocate's review shows a defense request for delay from October 3 to October 29 and that the latest request was from January 24, not January 27. Appellate defense counsel contend the latter information cannot be considered on this appeal because it was not before the law officer. See United States v Duffy, 3 USCMA 20, 11 CMR 20. Disregarding the staff judge advocate's review, however, does not help the accused. What appellate defense counsel overlook is the fact that the specific delays referred to on the motion were only those requested by civilian counsel. Trial counsel observed that during the accused's confinement there was about "a 60-day delay which is held attributable to the accused." That statement was undisputed. Consequently, if I limit the review, as the accused insists should be done, to the matters presented to the law officer, the time interval chargeable to the Government is reduced to 81 days; if I look to the staff judge advocate's review, the total of the delays requested by the accused amounts only to 48 days, leaving the Government to account for 93 days. Whatever the period, it cannot be said as a matter of law that the Government did not proceed with reasonable diligence.

Formal charges were originally filed against the accused twelve days after he was placed in confinement. These were referred to a special court. The designated trial counsel of that court was the same officer appointed trial counsel here. Since he personally read the charges to the accused on October 3, it is reasonably inferable they were referred for trial on or before that date. Trial was scheduled for October 29 with the accused represented by a military lawyer qualified within the meaning of Article 27 (b), Uniform Code of Military Justice, 10 USC § 827. That same counsel acted with civilian counsel for the defense in the trial below. Although he presented argument during the motion to dismiss, he did not contend he ever objected to the scheduled date of the special court-martial trial. It is reasonable to suppose, therefore,

he consented to the date of trial.[3] Up to this point, the Government was taking all necessary steps to comply with Article 10.

Left for consideration are the events between October 29 and February 3. A new and more serious charge came to the attention of the military authorities on October 29. That charge, with two of the previous charges, was ready for trial, according to appellate defense counsel, on January 27. (The staff judge advocate's review shows the date to be January 24.) Thus, in a period of 88 days, formal charges were prepared, investigated, and referred for trial. Twelve days of that period represents continuances requested by the defense. Occurring during that period were the Thanksgiving and Christmas holidays. The case was referred to trial on December 27 and actually came on for hearing less than a month later. Trial counsel told the law officer that there were "delays caused by the orderly course of business which this case required until actually coming to trial."[4] The statement was not challenged, or in any way controverted. On the contrary, it is emphasized by civilian defense counsel's remark that he was "not complaining about . . . the fact that it took this long to get to trial."

Considered as a whole, the showing made before the law officer could have been more detailed. It is, however, sufficient to justify the law officer's conclusion that the delay was not due to "purposeful or oppressive" design, or lack of reasonable diligence on the part of the prosecution. United States v Callahan, supra. Neither the accused's request of his squadron commander nor the defense motion to dismiss affects the conclusion.

The motion to dismiss was received by the convening authority on January 22 or 23. Since the motion was made before trial, it should have █ been considered by the convening authority. Manual for Courts-Martial, United States, 1951, paragraph 67b; Feld, A Manual of Courts-Martial Practice and Appeal, § 35 (1957). However, the accused did not press for a ruling, but acquiesced in the informal recommendation that the motion be presented to the law officer at trial. In any event, assuming the convening authority's action constituted a denial, under the procedure adopted by the parties, the correctness of his ruling is measured by the facts presented to the law officer. These are sufficient to support the ruling denying the motion.

As to the accused's request of his squadron commander, it has been held that a request addressed to █ the prosecuting attorney does not constitute a demand for trial. See United States v Lustman, supra, page 478. Whether this rule is applicable in the military I need not now decide. See Feld, op cit, § 30. The request was made in late November or early December. Perhaps the accused's commander should have informed the accused of his decision on the request, but the omission does not detract from the steps which were in fact taken to try the case. If the request was made in the latter part of November, the Article 32 investigation was still in progress; if the request occurred in "the first part of December," the convening authority was considering the disposition of the charges. Article 34(a), Uniform Code, supra. The events that followed are the same as those which I considered above, and they indicate the Government proceeded with reasonable diligence.

In my approach to the speedy trial issue, I have relied upon the matter presented to the law officer during the mo-

---

[3] In fact, the staff judge advocate's review shows it was defense counsel who requested a delay from October 3 to October 29.

[4] The allied papers show the proceedings were delayed from January 13 to January 23 because a witness was unavailable. It also appears there was an "abnormal work load" in the staff judge advocate's office which required trial counsel's participation in the trial of fifteen special courts, two general courts, three Article 32 investigations, and five board hearings. See King v United States, — F2d — (CA DC Cir) (January 8, 1959).

tion to dismiss. Since I have concluded that his ruling is correct, it is unnecessary to consider the contention that the staff judge advocate erred in referring to other matters in his consideration of the law officer's ruling.

The decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur in the result.