UNITED STATES, Appellant

v

HERMAN D. BATSON, First Lieutenant,
U. S. Marine Corps, Appellee

12 USCMA 48, 30 CMR 48

No. 14,199

Decided December 2, 1960

*Major Ted H. Collins* argued the cause for Appellant, United States.
*Lieutenant Colonel M. G. Truesdale* argued the cause for Appellee, Accused.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to desertion and ten larcenies, in violation of Articles 85 and 121, Uniform Code of Military Justice, 10 USC §§ 885 and 921, respectively. He was sentenced to dismissal, confinement at hard labor for two years and total forfeitures. Pursuant to a pretrial understanding, the convening authority approved only so much of the sentence as provided for dismissal, confinement for ten weeks, and forfeiture of $10.00 per day for seventy days. A board of review in the office of The Judge Advocate General of the Navy set aside the desertion conviction and ordered it dismissed on the ground that the accused had been denied his right to a speedy trial. The board approved the findings of guilty of the larceny offenses and, in reassessing the sentence, commuted it to a loss of 500 unrestricted numbers and forfeiture of $10.00 per day for thirty days. The Judge Advocate General thereupon certified the record to this Court seeking a determination as to whether the board of review was correct when it dismissed the desertion charge.

There is little, if any, dispute as to the facts, and they show the following situation. On June 28, 1959, the accused went absent without leave from his unit, which we note parenthetically had a San Francisco, California, mailing address, and remained absent for ninety-three days. On September 29, 1959, he was apprehended by civilian law enforcement authorities and delivered to military custody at Nashville, Tennessee. During this period of absence, he traveled about the United States and issued a number of worthless checks for which he received currency or merchandise in the amount of the face value of the instruments.

On October 5, 1959, he was transferred from his place of apprehension

to the Marine Corps School, Quantico, Virginia, where he was placed in confinement. On the following day charges were preferred, the accused was informed thereof, and a pretrial officer designated. In addition to the desertion charge the investigating officer was directed to inquire into matters pertaining to eight checks written by accused, who was apprised additional charges of larceny might possibly result. On October 9, 1959, a formal pretrial hearing commenced, but no evidence was taken because the accused requested a delay to enable him better to prepare his defense. The request was granted, and a further hearing did not take place until November 6, 1959. In the meantime, on October 14, 1959, the investigating officer requested that his appointing officer grant him additional time to complete the investigation. His assigned reasons for the request were that the number of bad checks issued by the accused had increased to forty-eight, a complaint had been lodged alleging that the accused had stolen an automobile on the west coast, information indicated he may have resisted apprehension, and statements had to be obtained on the checks cashed or drawn on banks in Hawaii and California. When the hearing reconvened on November 6, 1959, defense counsel made a statement to the pretrial investigating officer that the entire period of delay from October 9, 1959, was not chargeable to the accused. He did not fix the time actually needed by the defense, but he established that on November 4, 1959, the accused forwarded a letter to the Commanding Officer, Headquarters Battalion, Marine Corps School, Quantico, Virginia, requesting that he be released from confinement and brought to trial immediately or that the charges be dismissed. At that time, the investigating officer had not completed his collection of evidence, and the record shows he was seeking to obtain additional facts in connection with the larceny specifications. The request for dismissal was not granted; however, a hearing was held on November 6, 1959, and it lasted

some four hours. A further hearing was contemplated, but on November 20, 1959, the accused was sent to the National Naval Medical Center, Bethesda, Maryland. He returned to his station on January 8, 1960, and five days thereafter the final hearing was held by the investigating officer. This functionary submitted his report on January 14, 1960, but on January 20, 1960, the report was returned to him for further action in connection with some of the charges. On that same date the accused submitted another request for immediate trial or dismissal which was not granted. The investigating officer held a further hearing on January 25, 1960, and this hearing was recessed until the following day, at which time it was completed and the final report was resubmitted.

On February 3, 1960, the original desertion charge and two additional charges with some twenty-one specifications alleging resisting apprehension and larcenies by check were referred for trial by general court-martial. Thereafter, on February 16, 1960, the accused submitted a letter to the convening authority wherein he offered to plead guilty if certain of the additional charges and specifications were dismissed and a ceiling for the maximum punishment was fixed at limits suggested by him. This offer was accepted by the convening authority and the Government was prepared to go to trial. However, on February 23, 1960, the accused requested a continuance, which was granted and the case finally came on for hearing on February 29, 1960. At this time the accused moved to dismiss the desertion charge and, when his motion was denied, pleas of guilty were entered.

In answering the certified question in the negative we have no disposition to disagree with the general principles of law announced by the board of review. However, they are misapplied in this case. Certainly an accused person is entitled to an early settlement of the charges which are asserted against him. United States v Hounshell, 7 USCMA 3, 21 CMR 129. However, his rights are relative and

must be determined in the light of all attendant facts and circumstances. United States v Callahan, 10 USCMA 156, 27 CMR 230. It is when we view this record illuminated by the difficulties incident to investigating the many offenses committed by the accused in different parts of the United States that we conclude the board of review erred.

Before dealing with the facts touching on the issue, we dispose of one collaterally raised question. Some argument has been advanced to the effect that the chronology of events as detailed and submitted to the commanding officer by the investigating officer could not be considered as evidence by the law officer to support his ruling on the motion to dismiss. For the following reasons, we conclude to the contrary. Finding that he could not submit his report within the required time, the investigating officer requested permission to delay his report, and this request was granted. When the report was completed and submitted, it was found to be deficient in certain regards, and it was returned to the investigating officer for further proceedings. Article 33, Uniform Code of Military Justice, 10 USC § 833, provides that when a person is held for trial by general court-martial, the commanding officer shall report in writing to the convening authority the reasons for delaying a report beyond eight days after confinement. The chronology submitted by the investigating officer was directed by the commanding officer so that he could comply with the requirements of that Article. Accordingly, it was an official record which the participants treated as part of the record before the law officer. The information it contained was not disputed, it was used by the law officer as a base for his ruling, and trial counsel and defense counsel used excerpts to support the arguments they used to bolster their respective positions. Under those circumstances and in light of the fact that the document was being considered in an out-of-court conference, we have no hesitancy in holding that the events set out in the chronology could be considered properly by the law officer. See United States v Wilson, 10 USCMA 337, 27 CMR 411.

Passing on to a consideration of the facts and circumstances, we find this situation. Accused was absent for some ninety-three days and during this period he traveled extensively and cashed a substantial number of checks which were dishonored on presentment. The drawee banks were located in Hawaii, California and Virginia, and the checks were cashed in a number of different places. When charges were forwarded to the investigating officer on October 6, 1959, he was directed to inquire into the circumstances surrounding the alleged offense of desertion and eight possible check offenses. By October 14, 1959, some forty other worthless checks, the misappropriation of an automobile, and a count of resisting apprehension had been brought to his attention. These alleged offenses were committed in localities so widely separated in distance that correspondence was the only reasonable means of making the initial inquiries. Common sense indicates that when a series of crimes are committed in different states, a thorough pretrial investigation will be time consuming, and that is particularly true when different witnesses are required to prove each offense. Accordingly, the only real issue herein involved is whether the time involved in the investigation exceeded reasonable limits for the number of offenses committed, their locale and nature, the means of acquiring testimony to be used in a judicial hearing, and the delays brought on by the accused.

Between apprehension and trial, a total time of 153 days elapsed. It required six days to have the accused transferred from Tennessee to the Marine Corps Base at Quantico, Virginia. The formal pretrial hearing commenced on October 9, 1959, at which time the accused requested a continuance. If we give the accused more than his counsel established, we will assume he was ready to proceed with the pretrial hearing by October

19, 1959. That period accounts for a twenty-day delay. On the 6th of November, another hearing was held, but the absence of certain testimony required further activity on the part of the investigating officer. On November 20, 1959, the accused was hospitalized and he remained in that status until January 8, 1960. There are fifty days in that period which could not be used for hearing dates. Five days after accused's return, a final pretrial hearing was held. Glossing over the incidental details in early February 1960, by the 16th day of that month the accused and his counsel had reached some agreement in their clemency endeavors for they solicited the convening authority to accept a definite offer made by them. Finally, on February 23, 1960, accused requested a continuance. We, therefore, consider that he cannot contend that twenty days for the initial steps, fifty days for hospitalization, and some fifteen days in which he was working with officers of the Government to better his sentence could be used to support his argument that the delay was oppressive and vexatious.

As to reasons for the additional delay, it is to be remembered that at one time the investigating officer was required to investigate at least forty-eight check transactions, a charge of resisting apprehension, a possible misappropriation of an automobile, and one desertion charge. That they were not imaginary offenses is borne out by the pleas and the similarity of the transactions. The crimes were committed nation-wide, and each required separate treatment. The chronology of events shows consistent and continuous efforts by the pretrial investigating officer to ascertain the true facts about each alleged charge, and both the accused and the board of review tacitly admit that he was not dilatory in his investigation of the check offenses. It, therefore, seems anomalous to us to be faced with a holding that only one offense out of many, all arising at substantially the same time, should be dismissed for lack of a speedy trial. It

might be that in some unusual setting such a holding would be compelled, but in the ordinary situation a perpetuation of the rule would result in a most disorderly procedure.

Contrary to the board of review, we find no merit in appellant's contention that investigation of the desertion charge should be isolated and considered apart from inquiry into the larceny specifications. Under that theory, the yardstick for measuring a speedy trial on the desertion specification must remain untouched by any consideration of other conduct. We cannot accept that narrow view for it overlooks entirely the relevancy of accused's behavior while absent as it tended to prove or disprove his intent to remain away permanently. See United States v Ferretti, 1 USCMA 323, 3 CMR 57. Both he and the Government should not be penalized for seeking to obtain evidence on that element of desertion, and an investigating officer should develop fully all leads which might cast light on that issue. In the case at bar, the issuance of worthless checks, the accused's presence on different military posts where he cashed many of the instruments, and the using of his own name and serial number where he was known by members of the Marine Corps would aid the investigating officer and the court-martial in determining whether he intended to abandon the service. Some of those acts militate against the probability of return while others suggest to the contrary. But in either event, the pretrial investigator should search in those areas.

One other argument advanced by appellate defense counsel merits discussion. They argue that all of the evidence on the desertion charge was available to the investigating officer on November 6, 1959, and no good reason was shown as to why the Government could not proceed with the trial on that charge and continue the investigation of the larceny offenses. Aside from our previous comments on the relevancy of the evidence to influence a finding for or against an intent to

52

remain away permanently, one of the principal difficulties with that argument is that such a procedure would be contrary to military law and of doubtful benefit to the accused. Over a long span of years, the military has followed an authoritative enactment which requires that all known offenses be tried together in a single trial. It is a rule of procedure which the President can prescribe, and paragraph 30*f* of the Manual for Courts-Martial, United States, 1951, states the principle in the following language:

"Subject to jurisdictional limitations, charges against an accused, if tried at all, should be tried at a single trial by the lowest court that has power to adjudge an appropriate and adequate punishment."

With that rule in mind, absent some substantial prejudice to the defense of an accused—and no one contends that this accused was handicapped in defending on the merits—it would be reasonable for the investigating officer to wrap up all known offenses in one pretrial package. Moreover, it is interesting to note that the accused in his immediate request for trial or dismissal did not limit his demand to one charge. On the contrary, he included both the desertion and the larceny offenses. Finally the separation of the crimes for trial would not have aided the accused insofar as confinement was concerned. Assuming *arguendo* that the Government had proceeded on the desertion charge, regardless of the outcome, the other offenses would have been pending against the accused and he would have remained in confinement awaiting their disposition.

Accordingly, we hold the law officer did not err in refusing the defense motion for relief based upon the contention accused had been denied his right to a speedy trial. The certified question, therefore, is answered in the negative.

Ordinarily that would require that we reverse the decision of █ the board of review and return the record for further action, and I would so order.

However, after setting aside accused's conviction for desertion, the members of the board, in dealing with his sentence, recited his record of outstanding service and the circumstances that apparently motivated accused's offenses. They thereupon stated their belief that:

". . . even considering the gravity of the offenses of which he stands convicted, that portion of the sentence providing for dismissal from the service is inappropriate for this offender."

While the author Judge believes the board's determination had to do with the sentence deemed appropriate for the larcenies—the only "offenses of which he stands convicted"—and that in any event the board could, upon remand by us, reassess for appropriateness to clear up any possible uncertainty, my associates conclude otherwise. In their view the board of review clearly and emphatically indicated it considered dismissal a wholly inappropriate punishment for all the accused's misdeeds, and hence it would be inappropriate to continue the litigation. See United States v Best, 6 USCMA 39, 46, 19 CMR 165.

Therefore, since the accused was not denied a speedy trial, and because no other legal infirmity infests his conviction for desertion—to which he pleaded guilty—my colleagues see no reason to return the record to the board of review for further action. I disagree with that conclusion, for, among other reasons, the appropriateness of sentence must be determined by the entire record. See Article 66 (c), Uniform Code of Military Justice, 10 USC § 866. However, since the views of a majority of the Court control, the accused's conviction under Article 85 of the Code, supra, together with the findings of guilty of larceny, are hereby ordered affirmed, as is the decision of the board of review as to sentence.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.