UNITED STATES, Appellee

v

JAMES R. WILLIAMS, Airman Second Class,
U. S. Air Force, Appellant

12 USCMA 81, 30 CMR 81

No. 14,137

Decided January 6, 1961

*Major Quincey W. Tucker, Jr.*, argued the cause for Appellant, Accused.
With him on the brief was *Colonel James L. Kilgore*.
*Captain Richard T. Yery* argued the cause for Appellee, United States.

With him on the brief were *Colonel John F. Hannigan* and *Lieutenant Colonel Merlin W. Baker*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

At his trial for desertion, the accused moved to dismiss the charge on the ground he was deprived of his right to a speedy trial. The motion was denied, and the accused was convicted and sentenced. The accused renewed his challenge to the proceedings before the board of review, but it upheld the trial ruling. We granted review to consider the accused's contention, and the propriety of the inclusion in the post-trial review of new matter bearing on the issue.

Article 10 of the Uniform Code of Military Justice, 10 USC § 810, provides inter alia, that if the accused is in arrest or confinement before trial "immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." See also Article 33, Uniform Code of Military Justice, 10 USC § 833. In the motion to dismiss, defense counsel contended there was unreasonable delay in the prosecution of the accused. Formal charges were served on the accused on January 29, 1960, and the case came on for trial on February 9, 1960. Defense counsel conceded there was "no objection" to the period after January 29. That date, therefore, is the terminal date for the alleged period of delay. The initial date is the subject of substantial controversy.

It appears that in August 1959, the accused was arrested by civilian authorities in Dublin, Georgia, and held for trial on a vagrancy charge. During his incarceration in the civil jail, he admitted to an Air Policeman who visited the jail that he was a member of the Air Force. The civil authorities tried the accused in September 1959. On October 9, they released him to the military at Dublin, Georgia. Appellate defense counsel contend, in essence, that the Government must account for what action it took in regard to the accused from the time it learned he was an unauthorized absentee detained by civil authorities. Detention of an accused by civil authori- ■■■ ties for a civil offense, before preferment of any military charge, cannot properly be charged against the Government as part of the time for which it is accountable in determining whether it acted with reasonable dispatch in prosecuting the present offense. Cf. United States v Garner, 7 USCMA 578, 23 CMR 42.

While the military reacquired control of the accused on October 9, that date does not fix the begin- ■■■ ning of the period in issue. In a speedy trial problem, military control is a wholly neutral circumstance.

In other words, control itself is not the initiation of a criminal prosecution. We pointed out in United States v Callahan, 10 USCMA 156, 27 CMR 230, that confinement might be an appropriate beginning of the period for which the Government is accountable in a challenge to the reasonableness of the prosecution. For present purposes, we may assume that confinement, or the formal presentment of charges, whichever first occurs, determines the beginning of the period.

In the out-of-court hearing before the law officer, it was established that the accused was confined on October 27, 1959, at Keesler Air Force Base, Biloxi, Mississippi. The organization from which he absented himself was located on this base. It would seem, therefore, that October 27, not October 9, is the first day of the period subject to review. In fact, before the out-of-court hearing, in response to a question by the law officer, defense counsel said the delay occurred from October 27. Evidence admitted later in the trial tends to show the accused was under some sort of military restraint about October 9, and, upon that basis, appellate defense counsel maintain that the period from October 9 to October 27

must be accounted for. Since confinement is an important factor in a speedy trial issue, the point should have been fully developed at the hearing. Be that as it may, we assume *arguendo* that October 9 is the critical date.

Looking at the record of the proceedings as a whole, it clearly appears that the Government was actively engaged throughout the period in preparing the case against the accused in order to bring him to trial. Here and there are intervals of time during which no specific actions were taken. Brief periods of inactivity, however, in an otherwise active prosecution cannot be regarded as oppressive or unreasonable. United States v Wilson, 10 USCMA 337, 27 CMR 411. Appellate defense counsel maintain that the eighteen-day period involved in the transfer of the accused from Robins Air Force Base to Keesler is unreasonable. In particular, they stress the fact that the distance between the two bases is "only some 400" miles. They disregard, however, obvious administrative details. The accused was a stranger to the organization to which he was delivered. He had at one time during his confinement in the civil jail denied he was in the military service. The unit to which he was delivered, therefore, had to procure official information as to the accused's status and determine whether and where he should be tried for his unauthorized absence. It is apparent from the transfer that "steps" were taken to develop the case against the accused. These may not have been the speediest possible, but the law officer was justified in concluding that in view of the circumstances they were not unreasonably slow.

Appellate defense counsel place great emphasis on the interval of forty-one days between October 27, the day of accused's confinement at Keesler Air Force Base, and December 7, the date the charges were signed. Trial counsel advised the law officer that during this period the Government attempted to determine "exactly what offense" the accused had committed at the time of his apprehension by civil authorities. Such action was a reasonable incident of the proceedings against the accused. If the accused had committed an act which constituted a violation of the Uniform Code, it was properly includable in the proposed charge sheet. United States v Keith, 1 USCMA 442, 4 CMR 34. Moreover, it was reasonably inferable that the circumstances of the accused's civilian incarceration might shed light on his intent to remain away from, or return to, the military service. See United States v Nickaboine, 3 USCMA 152, 11 CMR 152. Thus, there is evidence of justifiable activity looking toward trial of the accused. The interval for completion of the activity is somewhat long, but we are unable to say it is so inordinately long as to be unreasonable and oppressive as a matter of law.

Finally, the accused contends there was unreasonable delay in the completion of the Article 32 investigation. Here again the record shows appropriate steps were taken, but that there was an interval of time between each step. We need not detail the events and the interstices between them. Suffice it to say, we are satisfied that the periods of relative inactivity are neither so long, nor so numerous, as to be demonstrably unreasonable. We conclude, therefore, that the law officer did not abuse his discretion in denying the motion to dismiss for lack of a speedy trial. United States v Wilson, supra. United States v Callahan, supra.

A supplementary issue raised by the proceedings below concerns the staff judge advocate's inclusion in the post-trial review of new matter relating to the speedy trial issue. Since we have concluded that the motion was properly denied by the law officer on the basis of the information before him, it is unnecessary to consider the effect of the staff judge advocate's action. See United States v Wilson, supra.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur.

This accused absented himself from his unit at Keesler Air Force Base,

Mississippi, on March 28, 1957, and was apprehended on April 6, 1959, by civilian authorities. However, he used an alias and did not disclose his service connections until August 27, 1959, and then only after he was informed that a comparison of fingerprints established he was hiding his true identity. He was tried, convicted, and sentenced in September 1959 but was not turned over to military control until October 9, 1959. It was necessary for the Air Force to transport him to Keesler Air Force Base, and this was some 450 miles from his place of confinement in the civilian jail. He was returned to that base and confined on October 27, 1959, but the intervening time is not unreasonable in light of the problems attendant to returning accused to the base in Mississippi. See United States v Garner, 7 USCMA 578, 582, 23 CMR 42. He was tried and convicted February 9, 1960, but defense counsel concede that the time between January 29, 1960, and trial should not be included in the delay period. Accordingly, I find that we are concerned only with a period of ninety-four days.

Without relating all of the necessary time-consuming details which are incidental to gathering the necessary records of a deserter, seeking out evidence concerning his activities while absent which might shed light on his intent, investigating the offense, conducting a pretrial hearing, referring charges, appointing and assembling courts, obtaining counsel and performing many proper functions which are necessary to assure both parties an opportunity to present facts on the substantive offense and extenuating and aggravating circumstances on sentence, I merely say this record does not entitle the accused to a dismissal. He was furnished counsel at the pretrial hearing, and at no time did he seek an early hearing. Furthermore, he does not contend that his defense was impaired or in any way affected, and the only prejudice he claims is that during the pretrial preparations he was incarcerated. But there can be no question regarding the propriety of accused's pretrial confinement. United States v Wilson, 10 USCMA 337, 339,

84

27 CMR 411. And I note parenthetically that the record shows he received credit for that time as the convening authority reduced the two-year sentence of confinement by four months upon recommendation of the staff judge advocate that the accused be credited with the time served prior to trial. Accordingly, under the facts of this record, I am not disposed to hold that, as a matter of law, the law officer erred when he denied accused's motion to be set free.

A further expression of my views on the law in this area, which cause me to concur with the Chief Judge, may be found in United States v Wilson, 10 USCMA 398, 27 CMR 472; United States v Brown, 10 USCMA 498, 28 CMR 64; United States v Batson, 12 USCMA 48, 30 CMR 48. See also United States v Hounshell, 7 USCMA 3, 21 CMR 129; United States v Callahan, 10 USCMA 156, 27 CMR 230; United States v Davis, 11 USCMA 410, 29 CMR 226.

FERGUSON, Judge (dissenting):

I dissent.

With the decision in this case, little remains of the rule which we laid down in United States v Brown, 10 USCMA 498, 28 CMR 64, and the door is opened wide for complete disregard by the armed forces of the Congressional commands of Uniform Code of Military Justice, Articles 10 and 33, 10 USC §§ 810, 833. No recital of generalities can disguise the effect of the principal opinion herein.

The accused was found guilty of desertion, in violation of Code, supra, Article 85, 10 USC § 885, and sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for two years, and reduction to the grade of basic airman. With some reduction in sentence, intermediate appellate authorities affirmed, and we granted review on issues concerning whether the accused was denied a speedy trial.

At the trial, defense counsel moved for dismissal of the charges on account of the delay in affording accused a hearing. Initially, the law officer

peremptorily denied the motion. However, when his attention was directed by the defense to our opinion in United States v Brown, supra, he withdrew his action and held an out-of-court hearing on the matter. There, the trial counsel presented a stipulation which recited that accused had been apprehended and confined in a civilian jail and finally returned to military control on October 9, 1959. Defense counsel then stated that accused was originally confined by civil authorities at Dublin, Georgia, for vagrancy on April 6, 1959. On August 27, 1959, he was interviewed by an Air Police investigator and admitted his identity and status as an absentee from the armed forces. Theraifter, he was tried by civil authorities, convicted of vagrancy, and sentenced. Apparently, his punishment was completed on October 9, 1959, for, on that date, he was returned to Air Force control at nearby Warner Robins Air Force Base, Georgia, where, as a suspected deserter, he was obviously confined. Finally, and for undisclosed reasons, he was returned to Keesler Air Force Base, Mississippi, the station from which he originally departed, and placed in its stockade on October 27, 1959. Charges were preferred and read to the accused on December 7, 1959. The pretrial investigation was commenced on approximately December 10, 1959. On the same date the investigating officer dispatched certain inquiries to a Deputy Sheriff in Dublin, Georgia, relative to the accused. The investigation was then held in abeyance until January 11, 1960, on which date the investigating officer was discharged from the Air Force and the answers to the inquiries which he had made to the Deputy Sheriff were received. Approximately two weeks later, another investigating officer was appointed, and the investigation was completed on January 26, 1960. The charges and allied papers were ultimately received by counsel on January 29, and the trial commenced on February 10, 1960. No complaint is made concerning the delay beyond January 29.

It is apparent that the report of the investigating officer was presented to the law officer and that he considered its contents in arriving at his decision, for both counsel referred to the document during the hearing on the motion. It, however, is of little assistance to the Government, for it merely confirms the chronology outlined above and expands upon it by showing that statements of certain apparently material witnesses were not obtained until January 11, and January 22, 1960, whereas the morning report extracts actually used in the trial were completed on December 7, 1959.

From the foregoing, it is clear beyond cavil that accused was returned to military control at Warner Robins Air Force Base, Georgia, on October 9, 1959, as a known absentee from the armed forces. Delay, completely unexplained by the record, occurred until January 29, 1960, a period of 112 days. If the time between receipt of the case by counsel and the actual trial is added, the Government's procrastination is extended to 124 days.

The period between accused's initial confinement and the preference of charges involved fifty-nine days, forty-one of which passed after his return from Warner Robins Air Force Base to Keesler Air Force Base. The investigation of the charges, which necessitated obtaining three morning report extracts and two statements, required forty-seven days. Review, preparation of the advice, and the reference of the charges occupied the balance of the period.

Code, supra, Article 10, provides pertinently:

". . . When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong, of which he is accused and to try him or to dismiss the charges and release him."

Code, supra, Article 33, provides:

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable,

85

forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."

It is clear that one of the things with which Congress was most seriously concerned were the extensive delays involved in trying accused under the Articles of War and the Articles for the Government of the Navy. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 906–907. Aware that military personnel have no recourse to processes such as bail, the legislation quoted supra was enacted in order to offer "assurance that the cases will be speedily processed." House Hearings, supra, at page 907; United States v Hounshell, 7 USCMA 3, 21 CMR 129. Our subsequent decisions, particularly that in United States v Brown, supra, sought to add substance to the right thus conferred upon the accused by the Congress.

In the *Brown* case, we were confronted with a situation similar to that presented here. It involved 108 days of unexplained delay. There, we reviewed the provisions of Code, supra, Articles 10 and 33, and concluded, at page 503:

"From these provisions, read in the light of the intent of Congress as ascertained from the views of the framers of the Code, set out in our opinion in United States v Hounshell, supra, it is clear that whenever it affirmatively appears that officials of the military services have not complied with the requirements of Articles 10 and 33, supra, and the accused challenges this delict by *appropriate motion*, then, *the prosecution is required to show the full circumstances of the delay.* Of course, an accused is not automatically entitled to a dismissal of all charges against him. Rather, the law officer must decide, from all the circumstances, whether the prosecution has proceeded with 'reasonable dispatch.' United States v Callahan,

10 USCMA 156, 27 CMR 230." [Emphasis supplied.]

Further reference to the *Brown* opinion will show that the trial counsel there sought to "explain" the delay in the same manner as the Government's representative did in this case—namely, by stating that it was a "matter of common knowledge" that desertion cases involved delay because of the necessity of obtaining records and evidence. The facts there also demonstrated an unexplained transfer of the accused, as here, between two Air Force Bases for trial. Thus, in my view, no distinction can be drawn between the two cases and reversal is equally required here.

Turning to the principal opinion, I invite attention to the contrast, between its reasoning and the matters established beyond cavil in the record. Thus, it is implied that accused's identity as a member of the armed forces was questionable at the time of his delivery to Warner Robins Air Force Base and that this issue needed investigation. The record, however, uncontrovertedly establishes that accused gave his name and service number to Air Police Investigator Blackman on August 27, 1959, and confessed that he was a member of the Air Force absent without leave. Blackman's statement also reveals that, by this date, a check of accused's fingerprints had conclusively demonstrated his identity. Thus, on the date he was turned over to the Air Force, there was no longer any question of his status. Moreover, no such excuse was made at the trial for the delay.

Secondly, emphasis is placed upon the necessity to determine exactly what offense had been committed by the accused at the time of his apprehension by civil authorities. I point out again that accused was interrogated by Air Force investigators on August 27, 1959, and turned over to authorities from Warner Robins on October 9, 1959. To say that these Government agents were unaware of the fact that he was held, tried, convicted, and sentenced for vagrancy is simply ridiculous. Moreover, even assuming that the Air Force

agents were not so inquisitive, a factor belied by their appearance at the Dublin jail specifically to question accused, it is clear that the delay between confinement and preference of charges did not involve that matter, for the only correspondence with the Dublin authorities shown to have occurred is that between the initial investigating officer and the Deputy Sheriff. Finally, I suggest that utilization of forty-one days to determine why accused was initially apprehended is simply unconscionable.

Lastly, no attempt is made to set forth the circumstances of the delay, as a whole, between the preference of charges and their ultimate reference for trial. My brothers simply content themselves with the declaration that "the periods of relative inactivity are neither so long nor so numerous as to be demonstrably unreasonable." Aside from the fact that we have heretofore placed the burden upon the Government to show that the delay incurred was reasonable, see United States v Brown, supra, I am at a loss to understand how one may conclude that a morning report desertion case requires forty-seven days for formal investigation alone, especially when the extracts are from local commands and prepared prior to appointment of the investigating officer. To the contrary, I would hold that the unexplained period smacks of oppressive and dilatory tactics deserving of the strongest condemnation.

In sum, I am of the view that the Government in this case presented to the law officer no explanation of the inordinate delay between accused's confinement and his trial. I am reinforced in this belief by the staff judge advocate's tardy attempt to support the record by inclusion in his review of various statements of persons not called as witnesses at the trial in order to justify the law officer's ruling. True, the accused may be guilty of desertion and deserving of punishment, but that is no reason for us to depart from the soundly reasoned concepts set forth in United States v Brown, supra, and to do away with the only means whereby the mandate of Congress may be enforced and the accused assured of a reasonably swift trial. In the absence of provision for peacetime bail, there is no other way to make the services comply with the legislative command.

I would reverse the decision of the board of review and order a rehearing, at which the Government would be free to explain any reasons why this accused was not afforded a prompt trial.