UNITED STATES, Appellee,

v.

Ivan K. NOEL, Airman First Class, U. S. Air Force, Appellant.

No. 33,371.
ACM 22077.

U. S. Court of Military Appeals.

Aug. 22, 1977.

Colonel Robert W. Norris, Major Gary C. Smallridge, and Captain Martin F. McAlwee were on the pleadings for Appellant, Accused.

Colonel Julius C. Ullerich, Jr. was on the pleadings for Appellee, United States.

Opinion of the Court

FLETCHER, Chief Judge:

The appellant was convicted of wrongful transfer and sale of heroin and of wrongful possession of marihuana in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a dishonorable discharge, forfeiture of $240.00 pay per month for 60 months, confinement at hard labor for 5 years, and reduction to the grade of airman basic. The convening authority approved the findings, and only so much of the sentence as provided for a dishonorable discharge, forfeiture of $240.00 pay per month for 36 months, confinement at hard labor for 36 months and reduction to the grade of airman basic. The United States Air Force Court of Military Review affirmed both the findings and sentence as approved by the convening authority. We undertook review to determine whether the trial judge erred in allowing the trial counsel, and shortly thereafter a court member, to question the appellant about his failure to make exculpatory statements at the time the marihuana was discovered by the military customs inspector. What precisely is involved is a determination of the propriety of questioning an accused about his decision to remain silent at the time of his arrest. We find

such a practice antithetical to both the Constitution and Article 31.[1]

The pertinent facts are clear. On October 9, 1975, the appellant, while processing through customs at the U–Tapao passenger terminal in Thailand, was stopped by a Technical Sergeant Lindsay because two marihuana detection dogs had alerted on a wooden elephant the appellant was carrying.[2] The elephant was seized, a hole was drilled in the side by Technical Sergeant Lindsay, and a green vegetable-like substance was extracted which tested positive for marihuana under the Becton-Dickinson Field Test. OSI agents were called in, and the appellant was given his Article 31/Tempia[3] warnings and arrested. At trial, the defense contended that the appellant did not know of the existence of the marihuana in the elephant and that he had merely been carrying the object for a friend, Airman First Class Gibbs, because Gibbs had too much baggage to carry by himself. Both the appellant and Airman First Class Gibbs testified for the defense, and it was developed that Gibbs purchased the elephant from a Thai national, but the appellant had no involvement in the purchase. Therefore, the defense argued that the government had failed to establish knowing, conscious, and exclusive possession of the marihuana by the appellant.

The prosecution, during cross-examination of the appellant in an attempt to undermine the defense position, asked the following questions:

Q: Did you believe there was marihuana in the [wooden] elephant after they had finished drilling?

A: No, sir, I didn't know that.

Q: Did Sergeant Lindsay tell you that he was looking for drugs?

A: Yes, sir.

Q: Explain to the court then what happened when you were there and he was drilling.

A: While he was drilling?

Q: Yes.

Q: Yes, tell them what happened.

A: Sergeant Lindsay was drilling into the elephant in my possession and I believe he saw the stick come out on the drill. He field tested it and it came up positive for marihuana and I was taken to another room and read my rights.

Q: All right, and at that point where the leafy substance was brought out, were you surprised?

A: Yes, sir.

Q: *What did you say?*

A: Nothing.

[Emphasis added.]

Upon completion of the cross-examination and a series of questions by the military judge, a court member questioned the appellant again concerning his decision to remain silent.

LT COL SHARKEY: After, back to U–Tapao again, after the customs people got a positive test on the leafy substance that was in the elephant, *you still said nothing* to anyone, is that correct?

A: True, sir.

Q: And when you were brought into the other room *you still said nothing?*

A: Yes, sir.

Q: *I am wondering why if the elephant wasn't yours, you just didn't say, "Hey, this isn't my elephant", you know, "I was just hand-carrying it for someone".*

A: I didn't know what to do. I was flabergasted (sic), I didn't know what to do.

[Emphasis added.]

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831.

2. Both the appellant and another serviceman, Airman First Class Gibbs, were carrying wooden elephants, and during the normal customs and anti-hijacking inspection, a marihuana-detection dog alerted on the elephant carried by the appellant. A second dog was brought in to verify this alert, and after this dog also gave a positive alert, Technical Sergeant Lindsay seized the elephants.

3. *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

■ We are presented with a record that graphically demonstrates that the court members relied·upon improper considerations in reaching their determinations as to appellant's guilt to the charge in question. Clearly it is impermissible, as was attempted in this case, to endeavor to impeach or undermine the credibility of an accused by reference to, or utilization of, his decision to refuse to incriminate himself which flowed from his rights under Article 31, UCMJ, and the Fifth Amendment to the Constitution. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). Corrective action is mandated.

Counsel for the government argue that neither *Doyle v. Ohio, supra,* nor *United States v. Hale, supra,* require the action that we take. They contend that each of these cases is inexorably linked to a defendant's reliance upon his *Miranda*[4] rights, and that the error only occurs when the reference is to an accused's post-arrest silence following proper *Miranda* warnings. Under their reading of the record, only one of the aforementioned references to Airman Noel's silence specifically concerned his decision to remain silent following such warnings, and, therefore, counsel for the government urge that the appellant was not prejudiced. We cannot accept such a proposition.

The government's·argument ignores· the express language of Article 31(b) which requires that no serviceperson suspected of an offense may be interrogated without first being advised of his right to make no state‌ment concerning the suspected offense, and also that any statement made by him may be used against him in a trial by court-martial. In the instant case the accused was without question a suspect ·within . the meaning of Article 31(b), UCMJ, from the moment the marihuana detection dog alert‐ ed and he was stopped by the military customs personnel.[5] Under .this Court's long‐ standing precedent,[6] the accused should have been advised of his rights under Article 31(b), and anything he said or did not say[7] without properly being ·warned was inadmissible. We feel it beyond cavil that to restrict the considerations expressed in‚ *Doyle* and *Hale* in the manner suggested by the government would be to ignore the Congressional mandate expressed in Article 31, and to totally emasculate the protections of that provision which in this aspect are broader than those delineated by the Supreme Court under *Miranda* and its progeny.[8] *United States v. White,* 17 U.S.C.M.A. 211, 216, 38 C.M.R. 9, 14 (1967).

Nor can we accept the government's argument as to the express . application .of *Doyle* and *Hale* to this record. We feel that it is clear that both the prosecutor and

**4.**· *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). ·

**5.** Examination of the testimony of both Technical Sergeant Lindsay and the appellant demonstrated that he was suspected of possessing and attempting to smuggle marihuana from the time he was initially stopped.

**6.** *See, e. g., United States v. Dohle,* 1 M.J. 223 (1975); *United States v. Seay,* 1 M.J. 201 (1975); *United States v. Harvey,* 21 U.S. C.M.A. 39, 44 C.M.R. 93 (1971).

**7.** Mr. Justice White aptly analyzed this facet of the situation in his opinion concurring in the judgment in *United States v. Hale,* 422 U.S. 171, 182–83, 95 S.Ct. 2133, 2140, 45 L.Ed.2d 99 (1975):

[W]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against

him, and that he may have an attorney if he wishes, it seems to·me that it´does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . . Surely Hale was not informed here that his silence, as`well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from *Miranda* warnings that this would not be the case.

· . . .

**8.** *See, e. g., Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

court member were questioning the appellant about his decision to remain silent throughout the period of his arrest. We discern nothing in these questions which demonstrates anything other than the fact that the court members were being asked to draw, and were participating in the drawing of, an inference of guilt from Airman Noel's decision to remain silent *after* he was given his *Miranda/Tempia* warnings.[9] As such, reversible error occurred on this basis as well.

We are compelled to order a rehearing as to all charges in this case rather than simply on the marihuana offense which was the subject of the aforementioned objectionable questions. We feel that this unusual remedy is necessary because, in our view, the record demonstrates that as to each incident the critical issue for the court members to resolve was the accused's credibility. The prosecution throughout the trial attempted to undermine Airman First Class Noel's credibility, and the court members participated in a lengthy series of questions to the accused concerning both incidents. As to each incident, the accused through his own testimony and other witnesses contested essential elements of the offenses charged, and as to the first incident, he specifically contested the veracity of the prosecution witness to the alleged heroin sale and possession. Each aspect of the defense strategy—the defense of innocent possession of the marihuana, and the contention that the accused had been the victim of an unexplained plot by the government witness as to the charges of possession and sale of heroin—was the subject of detailed questions by the court members both as to the reasonableness and credibility of the positions advanced by the accused.

Further, unlike the dissenting judge, we feel that during closing arguments, the question of the appellant's credibility was clearly discussed and squarely presented once again to the court members, as demonstrated by the following brief excerpt from the prosecutor's argument:

> That's not the only evidence we have. We also had here the opportunity to observe Airman Noel on the stand himself, and his story against the evidence introduced in court. The government would suggest to you that Airman Noel has not been quite candid with you. It's understandable, but it's not a defense.
>
> The government would suggest that these charges and specifications brought against this accused are true and correct. By the evidence that has been introduced in court, the man is, in fact, guilty of what he is alleged to have done and that there is sufficient evidence to convict the

---

**9.** The majority in *Doyle v. Ohio*, 426 U.S. 610, 619 n.10, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), rejected an argument similar to that advanced by the government in this case by concluding that it is not necessary that the defendant offer reliance upon his rights under *Miranda* as his justification for remaining silent as "the unfairness occurs when the prosecution, in the presence of the jury, is allowed to undertake impeachment on the basis of what may be the exercise of that right."

We note that Mr. Justice Marshall, in writing for the majority in *United States v. Hale*, 422 U.S. at 177, 95 S.Ct. at 2137, indicated a broader basis for the conclusion of error than *Miranda*.

> At the time of arrest and during custodial interrogation, innocent and guilty alike—perhaps particularly the innocent—may find the situation so intimidating that they may choose to stand mute. A variety of reasons may influence that decision. In these often emotional and confusing circumstances, a suspect may not have heard or fully understood the question, or may have felt there was no need to reply. See Traynor, The Devils of Due Process in Criminal Detection, Detention, and Trial, 33 U.Chi.L.Rev. 657, 676 (1966). He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention. In sum, inherent pressures of in-custody interrogation exceed those of questioning before a grand jury and compound the difficulty of identifying the reason for silence. (Footnote omitted.)

We need not decide whether *Doyle* represents a narrowing of the various factors expressed by Mr. Justice Marshall in *Hale,* as even under the reading of *Doyle* suggested by the government, we find that the very "unfairness" referred to by Mr. Justice Powell in that decision is present in the instant case, and in fact, is only heightened by the direct participation of the court member.

man and that the evidence that the defense has introduced is so shaky, so shoddy, so full of holes and inconsistencies and ducked answers, that it's not worthy of an acquittal.

In our view, while the offenses were separated by time, they were, under the facts of this case, nevertheless sufficiently interrelated to require a rehearing on them all. Appellant's credibility was central to a resolution of the case and thus was the subject of direct attack by the prosecution and open, searching inquiry by the court members. Under such circumstances the impermissible questions asked concerning appellant's decision to remain silent at the time of his arrest convince us that there is more than a fair risk that the impact of this error affected the findings as to all the charges. We are not disposed, given an error of this magnitude in the factual context discussed, to speculate as to the extent of prejudice. *See United States v. Moore,* 24 U.S.C.M.A. 217, 51 C.M.R. 514, 1 M.J. 390 (C.M.A.1976).

The decision of the United States Air Force Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge PERRY concurs.

COOK, Judge (dissenting):

I disagree with reversal of the findings of guilty of the marihuana offense for the following reasons. (1) No objections were made by either individual or appointed defense counsel to the challenged questions, although the trial judge had expressly indicated earlier that if the accused was subject to such questioning, objection thereto "would be fine." In the absence of objection, the alleged error should not be considered as a ground for reversal. Manual

for Courts-Martial, United States, 1969 (Revised edition), paragraph 154*d*; Fed.R. of Ev. 103(a)(1); *United States v. Walters,* 22 U.S.C.M.A. 516, 519, 48 C.M.R. 1, 4 (1973); *United States v. Cook,* 432 F.2d 1093 (7th Cir. 1970), *cert. denied,* 401 U.S. 996, 91 S.Ct. 1224, 28 L.Ed.2d 535 (1971).

(2) Even if the issue is considered and the matter treated as error,[1] there was no prejudice to the accused. Private First Class Gibbs had testified as a defense witness. He maintained that the elephant statute was his and he knew it had marihuana concealed in it; he asked for help to transfer his luggage from the barracks to the air base, and the accused responded; he did not tell the accused of the marihuana and the accused did not know that it was hidden in the statute; and finally, when at the airport the customs agents discovered the marihuana, the accused looked at him "with dismay." The crucial importance of this testimony to the defense was acknowledged by defense counsel in his final arguments. Defense counsel said: "[I]t's a question of credibility, it's a question of whether the government has proven to you beyond a reasonable doubt that Gibbs is a liar. The defense would submit the Government has not met that burden and the defense further submits that the defense's theory of lack of knowledge is viable and can be believed." The accused's own testimony on the matter was so incidental that I am convinced that the questions asked him did not influence the verdict.

(3) Conceding prejudice as to the marihuana offense, I perceive no justification for the majority's conclusion that the findings of guilty of the heroin offenses must be set aside. Even the accused has not asked for that relief. The circumstances of the commission of the two offenses were entirely different, and the accused's credibility in regard to the heroin offense was

---

1. I am inclined to the Government's position that there was no error. As the dissent noted in *Doyle v. Ohio,* 426 U.S. 610, 620, 625–26, 96 S.Ct. 2240, 2248, 49 L.Ed.2d 91 (1976), "nothing in the Court's opinion suggests that there would be any unfairness in using petitioner's prior inconsistent silence for impeachment pur-

poses," when his silence was not the result, as it was in *Doyle,* of exercise of his right to remain silent, after advice thereon as provided in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See also United States v. Moore,* 484 F.2d 1284 (4th Cir. 1973).

barely mentioned in the final arguments. On the record I cannot conclude, therefore, that the two sets of transactions and the accused's credibility in relation to them were " 'so interrelated as to be inseparable.' " *United States v. Johnson,* 3 M.J. 143, 151–52 (C.M.A.1977) (Cook, J., dissenting). *See also, United States v. April,* 7 U.S.C.M.A. 594, 23 C.M.R. 58 (1957). I believe, therefore, that the proper disposition of the case is to disapprove only the marihuana offense, and to return the record of trial to the Court of Military Review for reassessment of the sentence on the basis of the findings of guilty of the heroin offenses. In fact, *United States v. Moore,* 24 U.S.C.M.A. 217, 51 C.M.R. 514, 1 M.J. 390 (1976), cited in the majority opinion, upheld the findings of guilty of one offense, while setting aside those pertaining to the offense as to which the error in the admission of evidence pertained. In this connection, I note that the Court of Military Review changed the sentence approved by the convening authority by substituting a bad-conduct discharge for the dishonorable discharge and reducing the period of confinement and forfeitures from 36 months to 24 months. This action was taken by the court because it was believed to be required by *United States v. Courtney,* 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976), as the charges were alleged as violations of Article 134 rather than as violations of Article 92 of the Uniform Code of Military Justice. That construction of *Courtney* was disapproved in *United States v. Jackson,* 3 M.J. 101 (C.M.A. 1977), pet. for recon. denied, 3 M.J. 257 (C.M.A.1977). Although a preference has been expressed in this Court to allow an accused the windfall resulting from a mistaken application of the law by the Court of Military Review, I do not believe that preference should be applied here. *United States v. Singletary,* 14 U.S.C.M.A. 146, 151, 33 C.M.R. 358, 363 (1963) (Quinn, C. J., dissenting); *United States v. Batson,* 12 U.S.C.M.A. 48, 30 C.M.R. 48 (1960). The Government could not possibly have anticipated the Court's present action. In my opinion, therefore, the record should be returned to the Court of Military Review to reconsider its legal mistake as to the sentence, before the case is submitted for a rehearing.