UNITED STATES, Appellee,

v.

Mario S. REED, Seaman Apprentice, U.S. Coast Guard, Appellant.

No. 31,594.
CGCMS 23099.

U. S. Court of Military Appeals.

Nov. 17, 1976.

*Lieutenant G. Alex Weller*, USCGR, argued the cause for Appellee, United States.

Opinion of the Court

COOK, Judge:

The appellant was convicted by a special court-martial consisting of a military judge alone of conspiracy to make a false official statement, absence without authority, violation of a lawful general regulation, and the making of checks without sufficient funds (13 specifications), in violation of Articles 81, 86, 92 and 123a, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, 892 and 923a, respectively. We granted review to determine whether he was denied a speedy trial and whether the convening authority was disqualified from convening the court which tried the offenses and from reviewing the conviction.

Prior to trial the defense submitted a motion to the convening authority to dismiss the charges on the basis the appellant had been denied a speedy trial. Having received an adverse ruling by the convening authority the motion was renewed at trial before the military judge. The parties entered into a stipulation of fact reflecting the processing of the appellant's case (appellate exhibit IV). This stipulation reveals that the appellant was scheduled to appear before a Federal grand jury on September 4, 1974, concerning a forgery of a Government check. However, on this date the appellant entered into an unauthorized absentee status from the U.S. Coast Guard Base, St. Louis, Missouri, which was terminated by his apprehension in El Segundo, California, by Air Force security personnel on October 8, 1974. The appellant was immediately transferred to the custody of the U.S. Navy, which, in turn, released him to the Coast Guard on October 9. The appellant was confined on this date, but on October 10, he was released to an agent of the U.S. Secret Service, by direction of the Chief Counsel, U.S. Coast Guard. A military hold was placed on the appellant on October 10, and upon his return to St. Louis, Missouri, a military hold was placed

*Lieutenant Patrick S. Antrim*, USCGR, argued the cause for Appellant, Accused.

on him at the U.S. Marshal's office. On November 29 the appellant was released from the custody of the U.S. Marshal but due to an administrative error he was not returned to military control by the civil authorities; nor did the appellant return to his military unit. On December 9 the appellant appeared in the Federal District Court, Eastern District of Missouri, where he was taken into custody upon surrendering of bond. At this time, both the military and the St. Ann, Missouri, police placed a hold on the appellant. The appellant was sentenced on December 20 by the Federal judge who placed the appellant on probation for a period of 5 years. On this date the appellant was returned to the Coast Guard and pursuant to the direction of the district commander, the appellant was released to the St. Ann police and placed in a civilian jail on civilian charges. The appellant was transferred by the St. Ann police to the St. Louis police authorities on January 5, 1975. The appellant was apparently initially released by the St. Louis police but was returned to their control when an outstanding warrant was discovered. However, this warrant was withdrawn, and the appellant was returned to the Coast Guard base and placed in confinement on January 6. Charges were preferred on February 5, and such charges were referred to a special court-martial on February 12. The appellant was served with a copy of the charges on February 21, and trial commenced on February 27.

The stipulated chronology was supplemented by various witnesses who were called by both the trial counsel and the defense. The trial counsel called Lieutenant Cox, the convening authority, who testified that he had received a letter from the appellant when the appellant was still located in California. Lieutenant Cox noted in his testimony that the appellant apparently made no mention of returning to the Coast Guard in the letter in question. Finally, Lieutenant Cox noted that he had made various inquiries to insure that the people who were responsible for drafting the charges were drafting such charges as speedily as possible. The defense called Mr.

Kaplan, the civilian defense counsel who represented the accused in Federal District Court and the state court where other charges were pending. This defense counsel noted that he had attempted to persuade the U.S. Attorney to drop the charges but he was unsuccessful in this effort. He further noted that he had met with the convening authority in an attempt to transfer all of the bad check offenses to the Coast Guard. The defense also called Lieutenant Commander Burke, the civil rights officer at the time in question, who testified that the letter which was originally sent to the convening authority was forwarded to his office and such letter indicated the accused desire to return to the Coast Guard. Finally, the trial counsel called a special agent of the Coast Guard who testified that the investigation concerning the accused was not closed until December 17, 1974, because such investigation had to be held open until all the bad checks involved in the case were returned to the investigators.

As is apparent from the aforementioned stipulation, the present case involves pretrial confinement by both civil and military authorities. The appellant submits that the entire period of confinement is chargeable to the military authorities, while the Government submits it should not be held accountable for a portion of the civil confinement. Thus the parties disagree as to whether the pretrial confinement exceeded 90 days and whether the presumption of a denial of a speedy trial should be applied. *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974); *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

In *United States v. Williams*, 12 U.S.C.M.A. 81, 30 C.M.R. 81 (1961), this Court concluded that the detention of an accused by civil authorities for civil offenses cannot be charged against the Government in ascertaining whether the Government proceeded with reasonable dispatch. However, when an accused is confined by civil authorities on behalf of the military for military offenses, such time is chargeable to the Government. *United States v. Keaton*, 18

U.S.C.M.A. 500, 40 C.M.R. 212 (1969). Obviously, neither case is directly dispositive of the present case since the appellant was initially confined by military authorities but was released to civil authorities as a result of civil offenses. We note that the courts below have reached opposite conclusions as to whether the military is chargeable for civil confinement under such circumstances. *Compare United States v. Swartz*, 44 C.M.R. 403 (A.C.M.R.1971), *rev'd on en banc reconsideration* (unreported), in turn, reversed by this Court, 21 U.S.C.M.A. 75, 44 C.M.R. 129 (1971), *with United States v. Steverson*, 45 C.M.R. 649 (A.F.C.M.R.1972), *petition denied*, 21 U.S.C.M.A. 629, 45 C.M.R. 929 (1972).

■ We perceive no distinction between a case where an accused is apprehended and confined by civil authorities for civil offenses and the present case where an accused is apprehended by military authorities but is subsequently confined by civil authorities as a result of civil offenses. In both situations the civil confinement is a consequence of civil offenses rather than military offenses. Accordingly, there is no justification demanding a different result where an accused is initially apprehended by military authorities rather than civil police agents. While the military exercises some control to the extent it may elect to retain the accused, such control is in essence a judgment as to whether the military or civil offenses shall be tried first; when the judgment is exercised in favor of the civil offenses, the subsequent confinement is directly related to those offenses, not the military offenses.

Indeed, the presumption set forth in *United States v. Burton, supra*, was established to insure that a person confined as a result of a violation of the Uniform Code received a speedy trial as required by Article 10, U.C.M.J. *See United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973). Because the disposition of civil charges is the primary concern of civil authorities, the policy underlying *Burton* is inapplicable and the Sixth Amendment, United States Constitution, right to a speedy trial rather than Article 10, UCMJ, is applicable to those charges.[1] *See generally Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Accordingly, we hold for the purpose of the *Burton* presumption that the military is not accountable for periods an accused is retained in civil confinement as a result of civil offenses irrespective of whether his initial confinement was by civil or military authority.[2]

■ The appellant's pretrial confinement attributable to the military extended to only 55 days.[3] Our examination of the stip-

---

1. Federal prosecutions are now also subject to the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174 (1975).

2. The parties disagree as to whether the appellant's release to the civil authorities complied with Coast Guard regulations. Section 0702(a), Coast Guard Supplement, Manual for Courts-Martial, authorizes commanding officers to deliver an accused to the civil authorities. Section 0702(b) requires commanding officers to obtain specific authority from the Commandant of the Coast Guard if military offenses are pending or the accused is serving a court-martial sentence. Finally, section 0716 provides that nothing contained elsewhere is to be construed as precluding the commandant from delivering an accused to civil authorities where serious crimes are involved. The appellant's initial delivery to the civil authorities was pursuant to the direction of the Chief Counsel, United States Coast Guard. He was subse-

quently released to the St. Ann, Missouri, police by the district commander.

At the time of the district commander's action charges had not been preferred, and, thus, the requirement of section 0702(b) that a commanding officer obtain authorization from the commandant would be inapplicable. The chief counsel's authority to act in such matters was not challenged at the trial level and such authority does not appear in the record. However, whether he possessed such authority is not determinative of the speedy trial issue and need not be addressed by the Court. Rather, as indicated in the text of the opinion the relevant question for resolving an Article 10, UCMJ, violation is whether the civil confinement resulted from civil offenses—*not* the procedure employed to transfer the appellant to the civil authorities.

3. October 8 to October 10, 1974; December 20, 1974; and January 6 to February 27, 1975.

ulated chronology reveals no unreasonable or oppressive delays. Therefore, we conclude the appellant was accorded a speedy trial.[4]

■■■ We turn now to the appellant's contention that the convening authority was disqualified from convening the court because he was an accuser and was disqualified from reviewing the case because he appeared as a witness at trial. The test for determining whether a convening authority has become an accuser is whether he "was so closely connected to the offense that a reasonable person would conclude that he had a personal interest in the matter." *United States v. Gordon*, 1 U.S.C.M.A. 255, 261, 2 C.M.R. 161, 167 (1952), quoted in *Brookins v. Cullins*, 23 U.S.C.M.A. 216, 218, 49 C.M.R. 5, 7 (1974). Thus, a convening authority is disqualified when his conduct is of a personal rather than an official nature. The convening authority's connection in the present case involved his receipt of a letter from the appellant, his efforts to insure that the charges were speedily drafted,[5] and his pretrial negotiations with counsel. Under these circumstances his connection appears to be entirely official, and, thus, he did not become an accuser.

■■■ As previously noted the convening authority testified at trial regarding various measures he took to insure the appellant was accorded a speedy trial. His testimony was to some extent in conflict with the testimony of Lieutenant Commander Burke as to whether the appellant expressed a desire in his letter to return to the Coast Guard. Concerning the speedy trial issue the convening authority in his testimony noted, "I don't really think that there

was any delay other than routine matters." In *United States v. Ward*, 23 U.S.C.M.A. 387, 388, 50 C.M.R. 164, 165, 1 M.J. 18, 19 (1975), *citing United States v. Choice*, 23 U.S.C.M.A. 329, 49 C.M.R. 663 (1975), the Court held that testifying at trial does not automatically disqualify a convening authority. Rather, the Court held an examination of the record was required to ascertain if the convening authority was placed in the position of weighing his testimony against other conflicting evidence.

In the present case the parties disagree as to whether the conflict regarding the contents of the appellant's letter requires disqualification. We need not decide whether this factor alone mandates disqualification as the record indicates the convening authority was questioned as to his own efforts to insure the appellant was accorded a speedy trial. Furthermore, the quoted portion of his testimony to the effect that no delay occurred indicates a predisposition toward the speedy trial issue related to his own conduct. Accordingly, such a predisposition disqualified him as a reviewer in the present case.[6] *See United States v. Howard*, 23 U.S.C.M.A. 187, 48 C.M.R. 939 (1974). Finally, we note that the Government's argument that the appellant has not been prejudiced because a supervisory authority also reviewed the case has been rejected by the Court because such an argument "completely ignores the possible influential effect which the action of the convening authority had upon the supervisory authority." *United States v. Lacey*, 23 U.S.C.M.A. 334, 337, 49 C.M.R. 738, 741 (1975). *See also United States v. McElwee*, 16 U.S.C.M.A. 586, 37 C.M.R. 206 (1967), where this Court held an accused was entitled to a

---

4. Our disposition of the speedy trial issue renders it unnecessary to address the Government's argument that the 13 specifications involving the Article 123a offenses should be separated from the remaining offenses in resolving the speedy trial issue because the Government did not possess substantial information on which to base a preferral of such offenses at the time of appellant's apprehension. *See United States v. Ward*, 23 U.S.C.M.A. 391, 50 C.M.R. 273, 1 M.J. 21 (1975); *United States v. Johnson*, 23 U.S.C.M.A. 91, 48 C.M.R. 599 (1974).

5. The record reflects that the convening authority's intervention was limited solely to his efforts to insure that the charges were drafted within a reasonable period of time, and there is neither evidence nor allegation of command influence.

6. We emphasize that the disqualification resulted from a predisposition toward his own conduct—not the fact that he had previously denied a defense motion to dismiss.

review at both the convening authority and supervisory authority levels.

The decision of the U.S. Coast Guard Court of Military Review is reversed, and the action of the convening authority is set aside. The record is returned to the Chief Counsel, United States Coast Guard, for submission to a different competent authority for a new review and action.

Judge PERRY concurs.

FLETCHER, Chief Judge (concurring in the result):

I concur with the majority's conclusion that the standard set forth in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), is a measure against incarceration by the military society for an offense under the Uniform Code of Military Justice only. I concur also that the convening authority was disqualified.

I must respectfully dissent to any conclusion that the supervisory authority is a rubber stamp of the convening authority. When this Court determines matters on the "possible influential effect"[1] as the caliper rule of the integrity of a command person without any supportive evidence, we abate the total military justice system.

UNITED STATES, Appellee,

---

1. *United States v. Lacey*, 23 U.S.C.M.A. 334, 337, 49 C.M.R. 738, 741 (1975).