**UNITED STATES**

v.

**Darrell Lewis SMITH, 143 60 8897, Seaman Apprentice (E–2), U.S. Naval Reserve.**

**NMCM 83 1751.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 19 Jan. 1982.

Decided 18 June 1984.

LCDR Claude P. Goddard, JAGC, USN, Appellate Defense Counsel.

Alan Dexter Bowman, Individual Defense Counsel.

LT. R.G. Sosnowski, JAGC, USNR, Appellate Government Counsel.

Before SANDERS, Senior J., and MAY and CASSEL, JJ.

SANDERS, Senior Judge:

Contrary to his pleas, appellant was convicted by military judge sitting alone of the unpremeditated murder of [A] and was sentenced to confinement at hard labor for 40 years, total forfeitures, reduction to pay grade E–1 and a dishonorable discharge. The sentence was approved by the convening authority.

We find no merit in appellant's four assignments of error.

## I

APPELLANT WAS DENIED HIS RIGHT TO SPEEDY TRIAL UNDER ARTICLE 10, UCMJ, 10 U.S.C. § 810.

On 5 April 1981 appellant was confined by U.S. Naval authorities as the prime suspect for the murder of [A]. Since the offenses occurred in Olongapo City, Republic of the Philippines, and the victim was a Philippine national, the Philippine government had the primary right to exercise jurisdiction in the matter. *Military Base Agreement,* Article XIII. However, United States authorities had a right to the custody of appellant subject to his being made available to the Philippine authorities during the course of their investigation and to his being produced before the Philippine court upon request. *Agreed Official Minutes.* Although appellant's confinement was initiated as a precautionary measure without a formal request by Philippine authorities, on 20 April 1981 the local government did ask that he be placed in legal hold, a complaint against him for homicide having been filed.

On 30 April 1981 the United States requested that the Philippine government waive jurisdiction. The request was denied on 4 May 1981 and on 29 May appellant was charged by the Philippine authorities. On 23 October 1981, however, the charge was dismissed.

From past experience with the Philippine government, Naval authorities had, in the meanwhile, not been idle. A defense counsel, Lieutenant Price, was detailed for appellant on 6 April 1981, a Naval physician

conducted an autopsy on 11 April 1981, a charge was preferred on 1 June 1981 and an Article 32, UCMJ, pretrial investigation was convened on 4 June 1981 and first met on 12 June 1981. The investigative officer's report is dated 25 October 1981, two days after Naval authorities had gained jurisdiction over the subject matter.

The case was referred to trial by general court-martial on 3 November 1981 and the first Article 39(a), UCMJ, 10 U.S.C. § 839(a), session held on 16 November 1981. Lieutenant Price had been transferred from the Philippines to Texas on 19 October 1981 and at this opening session his continued services were requested by appellant. To accommodate this request and trial counsel's preparation, the case was set for 7 December 1981, the date trial counsel indicated he would be ready for trial. On 25 November 1981 Lieutenant Price was made available by his new command but at his request no further sessions were held until January 1982. Witness requests were litigated on 5 and 6 January 1982 with Lieutenant Price present, and the trial on the merits was held 11–15 and 17–19 January 1982.

An accused is entitled to be tried within a reasonable time after being placed in pretrial confinement or charges are preferred against him. If this is not done, he is entitled to have the charges dismissed. Article 10, UCMJ; paragraph 215e, *Manual for Courts-Martial, 1969 (Rev.) (MCM).* When pretrial confinement exceeds three months there is a rebuttable presumption of unreasonable delay unless the delay has been requested by the accused. Even if pretrial confinement does not exceed three months, if the accused has demanded speedy trial, as he repeatedly did in this case, the government must respond to the request by either proceeding immediately or showing adequate cause for any further delay. *United States v. Burton,* 21 USCMA 112, 44 CMR 166 (1971).

The government is not, however, accountable for pretrial confinement beyond its control. Thus pretrial confinement by

civil authorities in the United States for a civil offense does not count against the three month limitation. *United States v. Reed,* 2 M.J. 64 (CMA 1976). Similarly, if an accused is held in confinement by military authorities exclusively pursuant to a Status of Forces Agreement to assure his presence at a possible trial by the host country, the government is not accountable for the period of confinement. *United States v. Stubbs,* 3 M.J. 630 (NCMR 1977).

█ Smith was initially confined on 5 April 1981 and his trial on the merits began on 11 January 1982, 281 days later. From 20 April 1981 until 23 October 1981, though, a period of 186 days, his confinement was exclusively to meet treaty requirements and for the benefit of the Philippine government. At the outset, therefore, the government must account for a period of 95 days.[1]

As heretofore noted, the government was prepared for trial on 7 December 1981, but the trial on the merits, at the request of the defense, did not commence until January 1982. Thus the pretrial confinement for which the government is responsible was less than three months and the so called first prong of the *Burton* test is not applicable.

A careful scrutiny of the record reflects that the requirements of the second prong, which is applicable, have been met. This was a murder case. The investigation involved close cooperation between United States and Philippine authorities. Scientific evidence had to be obtained on one continent and evaluated on another. The presence of counsel who had been transferred back to the United States in the normal course of events and witnesses who were either at sea or in the United States had to be coordinated. Finally, an examination of the record reflects no prejudice to appel-

lant. We are convinced that the government moved with adequate dispatch in this case and that appellant's right to a speedy trial was not abridged.

## II

### THE EVIDENCE WAS INSUFFICIENT TO PROVE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT.

█ On the evening of 4 April 1981 appellant, on liberty in Olongapo City, arranged for [M], a bar girl and prostitute, to leave her "club" and accompany him to the Leo Lodge where he registered at 1045 and was given room 309. He did not have the entire cost of the room and borrowed 20 pesos (a peso was worth about 13¢) from a friend. A hotel employee showed appellant and [M] to their room and gave them two towels and a bar of soap. The purpose of the visit was not accomplished, however, since [M] was told that appellant had no more money. Sometime between 15 minutes and one hour after arrival they left the hotel.

After meeting two other friends and visiting several other bars until closing time, some time after 0100, 5 April, appellant met [A] at a bingo parlor. Some negotiations followed and she agreed to accompany appellant to Leo's, stopping on the way to change clothes and pick up a portable radio. She had on her person at the time 300 pesos and $40.00 with which she intended that day to pay her rent.

The events surrounding the death of [A] must be gleaned from the testimony of several witnesses none of whom saw her killed and each of whom could only furnish a small part of the mosaic which comprised the entire picture. Nevertheless, we find that after initial amenities [A] discovered that appellant had no money and refused

---

1. We are not unmindful of the fact that the military charge was preferred on 1 June 1981 nor of our holding in *United States v. Frostell,* 13 M.J. 680 (NMCMR 1981). In *Frostell,* however, the military and civilian charges, though both drug related, were separate. Here the military and civilian offense were identical and the government could not proceed to trial until jur-

isdiction over the offense had been surrendered to it. It would, moreover, indeed be ironic if the government were penalized for doing precisely what appellant demanded, that is, getting preliminary matters out of the way so trial could be had with a minimum of delay should the local government waive jurisdiction.

her favors whereupon their relationship deteriorated. About 0300 appellant seized her wallet and [A] called out in English loud enough to be heard in the next room, "God damn, give me back my money." [A] left the room in anger followed by appellant. A scuffle ensued in the hall during which appellant pushed [A] against the wall creating a bumping and rubbing sound heard by the occupant of the adjacent room. [A] swore in English and then, in fear, reverted to her native language. Appellant strangled her.

Sometime after taking [A's] body back to his room, where he laid it on its right side, appellant tried the doors of the hotel rooms looking for a vacant room in which to place the body. Ultimately he came upon a closet containing the hot water heater. Between one and two hours after [A]'s death appellant placed her body in the closet resting slightly on its left side. At or about the same time appellant disposed of [A]'s wallet (minus her money) and sandals by rolling them in towels and pushing them through the louvers of a window where they fell to an alley below. He tried to dispose of [A]'s radio the same way but, when it would not go through the openings, he abandoned it behind a column in the hallway.

Appellant left the Leo Lodge at 0711 and returned to his ship at approximately 1000 to 1030. [A]'s body was discovered by a bellboy making his cleaning rounds about the same time.

While our summary of these events is concededly based to a large degree on circumstantial evidence, we are confident that the evidence excludes any fair and rational hypothesis except that of appellant's guilt beyond a reasonable doubt. Paragraph 74 *a*(3), MCM.

### III

THE CONVENING AUTHORITY ERRED WHEN HE APPROVED THE SENTENCE ADJUDGED WITHOUT GIVING THE APPELLANT ADMINISTRATIVE CREDIT FOR 289 DAYS PRETRIAL CONFINEMENT IN CONSONANCE WITH FEDERAL CONFINEMENT PRACTICES, 18 USC Sec. 3568, 18 C.F.R. Sec. 2.10 (1980), WHICH ARE APPLICABLE TO THE MILITARY UNDER DEPARTMENT OF DEFENCE POLICY. DOD INSTRUCTION 1325.4, DATED 7 OCTOBER 1968. SEE *UNITED STATES V. ALLEN*, 14 M.J. 437 (CMA 1982) (ORDER GRANTING PETITION FOR REVIEW).

This assignment of error has been overtaken by events. *United States v. Allen*, 17 M.J. 126 (CMA 1984). In the absence of an indication to the contrary, we assume that at the appropriate time Naval or prison authorities will give appellant administrative credit for the entire period of pretrial confinement he served in connection with the acts for which he was ultimately sentenced, to-wit: 5 April 1981 until 19 January 1982.

### IV

THAT PART OF THE SENTENCE ADJUDGING CONFINEMENT AT HARD LABOR FOR FORTY YEARS IS INAPPROPRIATELY SEVERE PUNISHMENT IN LIGHT OF ALL FACTS AND CIRCUMSTANCES OF THIS CASE.

When he could not exploit his victim free of charge, without the slightest justification or excuse, appellant, frustrated over his second rejection of the evening by a prostitute and in order to cover up the theft of $79.00, brutally strangled her. We see nothing to warrant a sentence more lenient than that awarded and approved below.

Accordingly, the findings and sentence are affirmed.*

Judges MAY and CASSEL concur.

* Captain Edward K. Sanders took final action on this case prior to his detachment on 13 June 1984.