**UNITED STATES**

v.

**James E. ASBURY, 292 66 4326, Fireman Apprentice (E–2), U.S. Navy.**

**NMCM 88 1266.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 14 Jan. 1988.

Decided 30 Jan. 1989.

Lt Mary Anne Razim, JAGC, USNR, Appellate Defense Counsel.

LCDR L. Friedman, JAGC, USN, Appellate Government Counsel.

Before BYRNE, C.J., and ALBERTSON and JONES, JJ.

BYRNE, Chief Judge:

Fireman Apprentice Asbury was charged with three desertions in violation of Article 85, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 885. Contrary to Asbury's pleas, the military judge found him guilty of two lesser included offenses of unauthorized absence in violation of Article

86, UCMJ, 10 U.S.C. § 886, and the most recent desertion charge. This latter desertion charge is the focus of the issue. It alleges, *inter alia*, a desertion that commenced on or about July 30, 1986 and was terminated by apprehension on or about November 9, 1987.

On August 6, 1987, Asbury was arrested by Ohio police. A police check revealed Asbury was wanted by Ohio authorities for an alleged robbery in Ohio and by the U.S. Navy as an alleged deserter. Asbury testified at his court-martial that Ohio civilian authorities offered the U.S. Navy custody of him if the Navy would try Asbury for the Ohio robbery charge *or* if the U.S. Navy would guarantee Asbury's return to Ohio for trial on the robbery charge. In accordance with expressed Navy policy,[1] the Navy refused to accept Asbury under either condition.

On August 7, 1987, Ohio authorities set Asbury's bond at $2,000.00 (10% cash deposit). Asbury's mother paid the cash deposit of $200.00. The same day a "detainer" message was received by Ohio authorities from the U.S. Navy stating, in pertinent part: "[Asbury] is confirmed as being a military deserter. Request that you detain subject in your facility without release. Court jurisdiction—U.S. Navy; bail set—none." Thereafter, the Ohio Sheriff's Department refused to release Asbury on bail "as a result of the receipt of the detainer...." Defense Exhibit A. The bond was never formally revoked, but the Akron, Ohio Municipal Court turned down Asbury's request that it order the bond honored.

We agree with the military judge that the "civilian criminal charge was the reason the accused was held in pretrial confinement in Summit County Ohio." Military Judge's Essential Findings of Fact, at 2. Captain Jerry Lewis, Commander of the Summit County Jail, stated that had Asbury "been released on bail and subse-

---

1. Members who are apprehended by civil authorities on civil charges will remain in their custody until all civil charges have been resolved.... When a member is released on his or her own recognizance, posts bail, etc., with civil charges still pending, ... [Navy representatives] must advise the civil authorities prior to transport that the Navy cannot retain the member in that area or guarantee the member's presence for trial.
Deserter Apprehension Program Standards Operations Manual § 607 (Sept.1985), NAVMIL-PERSCOMINST 1600.3.

quently picked up by the Navy, we would have had to submit our own detainer or extradition proceeding to get him back." Defense Exhibit B. By precluding this additional administrative burden, Ohio could, and did, promptly dispose of the Ohio robbery charge.

Fireman Apprentice Asbury was convicted of robbery in Ohio Superior Court on November 9, 1987. On that date, Asbury was placed on probation and the Navy was notified that his "civilian charges had been resolved." Defense Exhibit A.

Asbury was placed in military pretrial confinement from November 9, 1987 until January 14, 1988. At trial, his defense counsel asserted that the Government was chargeable for speedy trial purposes for both his civilian confinement from August 7, 1987 until November 9, 1987 and his military pretrial confinement. This civilian period of time encompassed the date the Ohio Sheriff's Department refused to release Asbury on bail until he was eventually, after trial and conviction, turned over to the Navy. Consequently, the defense asserts, Fireman Apprentice Asbury had been in pretrial confinement for these present charges for 154 days—a period far in excess of the maximum 90 days permitted by Rule for Courts–Martial 707(d).

█ Appellate defense counsel has vigorously asserted, in briefs and oral argument, that the military judge erred in denying appellant's motion to dismiss the charges based on a denial of speedy trial. We see the issue before us in these terms:

DOES A MILITARY DETAINER REQUEST OF CIVILIAN AUTHORITIES THAT A DESERTER, INITIALLY CONFINED BY CIVILIAN AUTHORITIES, BE DETAINED WITHOUT RELEASE UNTIL RESOLUTION OF CIVILIAN CHARGES, CONSTITUTE PRETRIAL CONFINEMENT CHARGEABLE TO THE MILITARY FOR SPEEDY TRIAL PURPOSES?

We hold that such a military detainer request does not make the Government accountable for the civilian confinement in determining if the appellant has been denied a speedy trial for his military offenses.

In *United States v. Reed*, 2 M.J. 64 (C.M.A.1976), Reed became an unauthorized absentee from his command on the date he was to appear before a federal grand jury concerning his alleged forgery of a government check. For the next several months, Reed was held, for varying amounts of time, in civilian confinement by federal and state authorities for alleged violations of federal and state laws. Reed asserted that the entire period of pretrial confinement by military *and* civilian jurisdictions was chargeable against the Government for speedy trial purposes. The United States Court of Military Appeals, however, concluded that the time Reed was in civilian pretrial confinement was not chargeable to the Government for speedy trial purposes. The Court noted that in *United States v. Williams*, 12 U.S.C.M.A. 81, 30 C.M.R. 81 (1961), it had "concluded that the detention of an accused by civil authorities for civil offenses cannot be charged against the Government in ascertaining whether the Government proceeded with reasonable dispatch." *Reed*, 2 M.J. at 66. "While the military exercises some control to the extent it may elect to retain the accused, such control is in essence a judgment as to whether the military or civil offenses shall be tried first; *when the judgment is exercised in favor of the civil offenses, the subsequent confinement is directly related to those offenses, not the military offenses*." (Emphasis supplied.) *Reed*, 2 M.J. at 67. The Court in *Reed* then concluded that because the disposition of civil charges is the primary concern of civil authorities, *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), was inapplicable.[2]

In Asbury's case, Ohio authorities had no obligation to honor the U.S. Navy's request that Fireman Apprentice Asbury be denied

---

**2.** This case is distinguishable from *United States v. Hubbard*, 21 U.S.C.M.A. 131, 44 C.M.R. 185 (1971), where an unauthorized absentee was allowed to languish in civilian confinement after apprehension by the Federal Bureau of Investigation for unauthorized absence.

bond. They could have released him, but if they had done so, the appellant would still have been an unauthorized absentee subject to apprehension by the U.S. Navy as a deserter. Thus, if the appellant had been released on bail, he would have had an obligation to return to his command [3] which he surely would have done, as he was very anxious to be taken into Navy custody so he could receive some military pay to support his family. R. 13. Ohio authorities were apparently aware of this fact. R. 12. A Department of the Navy regulation states that if appellant had returned to his command while released on civilian bail, his commanding officer "should normally grant liberty or leave to permit appearance for trial." [4] However, in appellant's case the U.S. Navy was not going to *guarantee* the appellant's return for trial. Consequently, to ensure completion of trial on the Ohio criminal charges before the Navy assumed custody of the appellant, Ohio authorities returned the bond money tendered by appellant's mother. Thus, Ohio authorities denied Fireman Apprentice Asbury bond because they did not want to lose jurisdiction over him to military authorities and then have to request his return from the Navy at some later date in order to try him for robbery. It was the prompt disposition of their state crime that motivated Ohio authorities to turn down Asbury's request that his bond be honored. The pretrial confinement for civilian offenses, therefore, may not be chargeable to the Government in determining whether the appellant had been denied a speedy trial for his military offenses. [5]

If Asbury's desertion terminated on the date of receipt of the Navy's detainer, August 7, 1987, we may only affirm a desertion which terminates on August 7, 1987.

■ Therefore, we believe that this additional issue is implicit in this case:

DOES A MILITARY DETAINER REQUEST THAT CIVILIAN AUTHORITIES DENY A DESERTER BAIL UNTIL RESOLUTION OF CIVILIAN CHARGES, TERMINATE A DESERTION?

We hold that a detainer request, under these circumstances, does not terminate a desertion.

No military control was exercised over Asbury between August 7, 1987 and November 9, 1987. Generally, only the exercise of military control may terminate an unauthorized absence. [6]

■ One exception to this general rule is that an apprehension by civilian authorities, acting on behalf of the military, pursuant to a DD–553 request, will terminate an unauthorized absence. [7] In such a case, civilian authorities would be acting for military authorities. But, while there was probably a DD–553 form which requested civilian authorities to apprehend Asbury, he was not apprehended pursuant to such a request nor retained pursuant to such a request. A second exception occurs when an unauthorized absentee is arrested by civilian authorities on suspicion of committing civilian crimes, and civilian authorities then offer to turn the absentee over to military authorities. Once that offer is made, the unauthorized absence terminates. [8] In appellant's case, however, civilian authorities made a conditional offer which the military refused. This case, therefore, is within the line of cases that have concluded that because the civilian

3. JAGMAN 1312.

4. *Id.*

5. *Cf., United States v. Reed,* 2 M.J. 64 (C.M.A. 1976); *United States v. Keaton,* 18 U.S.C.M.A. 500, 40 C.M.R. 212 (1969); *United States v. Williams,* 12 U.S.C.M.A. 81, 30 C.M.R. 81 (1961).

6. *United States v. Lamphear,* 23 U.S.C.M.A. 338, 49 C.M.R. 742 (1975); *United States v. Jackson,* 1 U.S.C.M.A. 190, 2 C.M.R. 96 (1952); *United States v. Huffman,* 10 C.M.R. 340 (ABR 1953);

and *United States v. Pettersen,* 14 M.J. 608 (AFCMR 1982).

7. *United States v. Garner,* 7 U.S.C.M.A. 578, 23 C.M.R. 42 (1957); and *United States v. Williams,* 7 C.M.R. 726 (AFBR 1953). *See also United States v. Ward,* 48 C.M.R. 554 (ACMR 1974).

8. *United States v. Lamphear, supra; United States v. Webster,* 27 C.M.R. 956 (AFBR 1958) and *United States v. Agee,* 11 M.J. 905 (AFCMR 1981).

confinement of an unauthorized absentee is for civilian crimes, the unauthorized absence status continues until there is a return to military control.[9]

 Fireman Apprentice Asbury's desertion did not terminate until November 9, 1987—the day Ohio authorities notified the U.S. Navy that his civilian charges had been resolved and, implicitly, that he was available for pick-up by the Navy.

The findings and sentence, as approved on review below, are affirmed.

Judge ALBERTSON and Judge JONES concur.

LCDR L. Saccoccio, JAGC, USN, Appellate Defense Counsel.

LT Sigurd R. Peterson, Jr., JAGC, USNR, Appellate Government Counsel.

Before BYRNE, C.J., and MIELCZARSKI and RUBENS, JJ.

---

9. *United States v. Fields,* 13 U.S.C.M.A. 193, 32 CMR 193 (1962) and *United States v. Grover,* 10 U.S.C.M.A. 91, 27 C.M.R. 165 (1958).